CHAD A. READLER
Acting Assistant Attorney General

ERIC WOMACK
Assistant Director, Federal Programs Branch

ANJALI MOTGI (Texas Bar No. 24092864)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530
(202) 305-0879 (T) | (202) 616-8470 (F)
Anjali.Motgi@usdoj.gov

*Counsel for United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEVE GALLION, individually and on
behalf of all others similarly situated,

*Plaintiffs*,

v.

CHARTER COMMUNICATIONS,
INC., SPECTRUM MANAGEMENT
HOLDING COMPANY, LLC, and DOES
1 through 10, inclusive,

*Defendants*.

Case No. 5:17-cv-01361-CAS-KK

**UNITED STATES OF AMERICA'S
NOTICE OF INTERVENTION AND
OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS**

Judge: Hon. Christina A. Snyder
Date: February 5, 2018
Time: 10:00 a.m.
Ctrm: 8D

**TO PLAINTIFF, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 9, 2018, the United States of America will intervene in the above-captioned case and oppose Defendants' motion for judgment on the pleadings on the ground that the Telephone Consumer Protection Act of 1991 is constitutional under the First Amendment.

Pursuant to Federal Rules of Civil Procedure 5.1(c) and 24(a)(1), and in accordance with the authorization of the Solicitor General of the United States, the United States of America hereby intervenes in this case for the limited purpose of defending the constitutionality of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.  On September 26, 2017, Defendants filed a Notice of Constitutional Question pursuant to Federal Rule of Civil Procedure 5.1(a).  *See* ECF No. 19.  In that Notice, Defendants stated that they had filed a motion for judgment on the pleadings in which they had "asserted a constitutional challenge to 47 U.S.C. § 227(b)(1)(A)(iii)," the Telephone Consumer Protection Act of 1991 ("TCPA").  *Id.* at 1-2.  Specifically, Defendants contend that "47 U.S.C. § 227(b)(1)(A)(iii) violates the First Amendment of the United States Constitution and therefore cannot impose liability upon" them.  *Id.* at 2.  The Court has not yet certified the constitutional question, as required by Rule 5.1(b) and 28 U.S.C. § 2403.  Pursuant to the Court's Order of November 15, 2017, *see* ECF No. 37, the current deadline for the United States to intervene is January 9, 2018.

The United States is entitled to intervene in this case pursuant to the Federal Rules of Civil Procedure and statute.  Rule 5.1(c) permits the Attorney General to intervene in an action where, as here, the constitutionality of a federal statute is challenged.  *See* Fed. R. Civ. P. 5.1(c).  Rule 24 further permits a non-party to intervene when the non-party "is given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a)(1).  The United States has an unconditional statutory right to intervene "[i]n any action . . . wherein the constitutionality of an Act of Congress affecting the public interest is drawn in question . . . ."  28 U.S.C. § 2403(a).  In such an action, "the court . . . shall permit the United States to intervene . . . for argument on the question of constitutionality."  *Id*.  Here, Defendant has "drawn in question" the constitutionality of § 227, and the United States has an unconditional right to intervene to defend the statute.

Attached hereto is the United States' memorandum in defense of the constitutionality of the TCPA. The United States' intervention, including its filing of a memorandum in support of the constitutionality of the TCPA, will not interfere with the timely adjudication of this action. This notification is also timely; as previously noted, the United States' deadline for intervention is January 9, 2018. *See* ECF No. 37.

For these reasons, the United States hereby provides notice of intervention in this matter for the purpose of defending the constitutionality of the TCPA. The United States further states that its Opposition to Defendant's Motion for Judgment on the Pleadings is based on this Notice, the attached Memorandum of Points and Authorities, and all pleadings and records on file herein.

Respectfully submitted this 9th day of January, 2018,

CHAD A. READLER
Principal Deputy Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Anjali Motgi*
ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879 | Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

*Counsel for the United States of America*

1  CHAD A. READLER
   Acting Assistant Attorney General
2
   ERIC WOMACK
3  Assistant Director, Federal Programs Branch

4  ANJALI MOTGI (Texas Bar No. 24092864)
   Trial Attorney
5  United States Department of Justice
   Civil Division, Federal Programs Branch
6  20 Massachusetts Ave., NW
   Washington, D.C. 20530
7  (202) 305-0879 (T) | (202) 616-8470 (F)
   Anjali.Motgi@usdoj.gov
8
   *Counsel for United States of America*
9

10              **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

12
   STEVE GALLION, individually and on          Case No. 5:17-cv-01361-CAS-KK
13 behalf of all others similarly situated,
                                               **UNITED STATES OF AMERICA'S**
14                           *Plaintiffs*,     **OPPOSITION TO DEFENDANTS'**
                                               **MOTION FOR JUDGMENT ON THE**
15              v.                             **PLEADINGS AND BRIEF IN SUPPORT OF**
                                               **THE CONSTITUTIONALITY OF THE**
16 CHARTER COMMUNICATIONS,                     **TELEPHONE CONSUMER PROTECTION**
   INC., SPECTRUM MANAGEMENT               **ACT OF 1991**
17 HOLDING COMPANY, LLC, and DOES 1
   through 10, inclusive,                      Judge: Hon. Christina A. Snyder
18                                             Date: February 5, 2018
                             *Defendants*.     Time: 10:00 a.m.
19                                             Ctrm: 8D
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

ARGUMENT ......................................................................................................... 4

I.      Binding Ninth Circuit Precedent Continues to Recognize the TCPA as a Valid, Content-Neutral Restriction. ........................................................................ 5

II.     The Government-Debt Exception Does Not Render the TCPA Content Based. ................. 8

    A.      Defendants Lack Standing to Challenge the Government-Debt Exception. ............. 8

    B.      The Government-Debt Exception is Not Content or Viewpoint Based. ................ 10

III.    The TCPA Does Not Discriminate Among Speakers. ....................................... 12

IV.     Defendants' Additional Arguments for Strict Scrutiny are Meritless. ............................... 14

    A.      The TCPA's Application to Commercial Speech Does Not Alter the Standard of Review. ................................................................................... 14

    B.      The FCC's Orders Do Not Render the Statute Content Based ........................... 15

V.      If the Court Finds the TCPA Content Based, it Should Conclude that the Statute Satisfies Strict Scrutiny. ............................................................................... 18

    A.      The TCPA Serves a Compelling Government Interest. ....................................... 18

    B.      The TCPA is Neither Over- Nor Under-Inclusive. ............................................ 20

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Am. Ass'n of Political Consultants, Inc. v. Sessions*,
    2017 WL 1025808 (E.D.N.C. Mar. 15, 2017) ........................................................ 18

*Am. Bird Conservancy v. FCC*,
    545 F.3d 1190 (9th Cir. 2008) ............................................................................... 17

*A.N.S.W.E.R. Coal. v. Kempthorne*,
    537 F. Supp. 2d  (D.D.C. 2008) .............................................................................. 14

*Bonita Media Enterprises, LLC v. Collier Cty. Code Enf't Bd.*,
    2008 WL 423449 (M.D. Fla. Feb. 13, 2008) ......................................................... 13

*Brickman v. Facebook, Inc.*,
    230 F. Supp. 3d 1036 (N.D. Cal. 2017), *appeal filed*, No. 17-80080 (9th Cir.) ................ *passim*

*Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*,
    149 F.3d 1119 (10th Cir. 1998) ............................................................................... 9

*Cahaly v. Larosa*,
    796 F.3d 399 (4th Cir. 2015) ........................................................................... 7, 22

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ............................................................................................. 11

*Carey v. Brown*,
    447 U.S. 455 (1980) ............................................................................................... 18

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ............................................................................................... 15

*Citizens for Free Speech, LLC v. Alameda*,
    194 F. Supp. 3d 968 (N.D. Cal. 2016) ................................................................... 14

*Citizens for Free Speech, LLC v. Cty. of Alameda*,
    114 F. Supp. 3d 952 (N.D. Cal. 2015) ..................................................................... 7

*City of L.A. v. Alameda Books, Inc.*,
    535 U.S. 425 (2002) ................................................................................................. 7

*Clearfield Trust Co. v. United States*,
    318 U.S. 363 (1943) ............................................................................................... 20

*Dalton v. United States*,
    816 F.2d 971 (4th Cir. 1987) ................................................................................. 16

*Demarest v. City of Leavenworth*,
   876 F. Supp. 2d 1186 (E.D. Wash. 2012) ................................................................. 13

*Dimmitt v. City of Clearwater*,
   985 F.2d 1565 (11th Cir. 1993) ............................................................................... 13

*FCC v. ITT World Commc'ns, Inc.*,
   466 U.S. 463 (1984) ................................................................................................ 17

*Frisby v. Schultz*,
   487 U.S. 474 (1988) ................................................................................................ 18

*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 663 (Jan. 20, 2016) ...... *passim*

*Greenley v. LIUNA*,
   -- F. Supp. 3d --, 2017 WL 4180159 (D. Minn. Sept. 19, 2017) ........................................ *passim*

*Gresham v. Rutledge*,
   198 F. Supp. 3d 965 (E.D. Ark. 2016) ..................................................................... 22

*Gresham v. Swanson*,
   866 F.3d 853 (8th Cir. 2017), *cert denied*, No. 17-676 (2018) .................................... 9

*Holt v. Facebook, Inc.*,
   240 F. Supp. 3d 1021 (N.D. Cal. 2017), *appeal filed*, No. 17-80086 (9th Cir.) ................ *passim*

*INS v. Chadha*,
   462 U.S. 919 (1983) ........................................................................................... 8, 9

*Joffe v. Acacia Mortg. Corp.*,
   121 P.3d 831 (Ariz. Ct. App. 2005), *cert denied*, 549 U.S. 1111 (2007) ......................... 2

*Klaver Const. Co. v. Kansas Dep't of Transp.*,
   211 F. Supp. 2d 1296 (D. Kan. 2002) ....................................................................... 9

*Maryland v. Universal Elections, Inc.*,
   729 F.3d 370 (4th Cir. 2013) ................................................................................ 4

*Matter of Extradition of Lang*,
   905 F. Supp. 1385 (C.D. Cal. 1995) ........................................................................ 9

*Mejia v. Time Warner Cable, Inc.*,
   2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017), *granting stay but denying motion to
   certify interlocutory appeal*, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017) ..................... *passim*

*Mey v. Venture Data, LLC*,
245 F. Supp. 3d 771 (N.D.W. Va. 2017) ........................................... 2, 4, 10

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) .............................................................................. 2

*Moser v. FCC*,
46 F.3d 970 (9th Cir. 1995) ............................................................. 4, 5, 6

*Norton v. City of Springfield*,
806 F.3d 411 (7th Cir. 2015), *cert denied*, 136 S. Ct. 1173 (2016 ............. 7

*Patriotic Veterans, Inc. v. Zoeller*,
845 F.3d 303 (7th Cir. 2017), *cert denied*, 137 S. Ct. 2321 (2017) .................. *passim*

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ....................................................................... 11, 12

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015) .................................................................. 1, 6, 13

*Reno v. Am. Civil Lib. Union*,
521 U.S. 844 (1997) ............................................................................ 21

*Rideout v. Gardner*,
123 F. Supp. 3d 218 (D.N.H. 2015), *cert denied*, 137 S. Ct. 1435 (2017) ................. 7

*Rosenberger v. Rector and Visitors of UVA*,
515 U.S. 819 (1995) ............................................................................ 11

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ................................................................... 3

*Solantic LLC v. Neptune Beach*,
410 F.3d 1250 (11th Cir. 2005) ............................................................... 13

*U.S. W. Comm'cn., Inc. v. Jennings*,
304 F.3d 950 (9th Cir. 2002) ................................................................. 17

*Valot v. Se. Local Sch. Dist. Bd. of Educ.*,
107 F.3d 1220 (6th Cir. 1997) ............................................................... 19

*Van Bergen v. Minnesota*,
59 F.3d 1541 (8th Cir. 1995) ............................................................ 1, 9, 11

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ............................................................................ 6

*Williams-Yulee v. Florida Bar*,
   135 S. Ct. 1656 (2015) ............................................................................ 22

*Wilson v. A.H. Belo Corp.*,
   87 F.3d 393 (9th Cir. 1996) ..................................................................... 17

*Women Strike for Peace v. Morton*,
   472 F.2d 1273 (D.C. Cir. 1972) .............................................................. 14

*Woods v. Santander Consumer USA, Inc.*,
   2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ..................................... 4, 8

*Working Am., Inc. v. City of Bloomington*,
   142 F. Supp. 3d 823 (D. Minn. 2015) ....................................................... 7

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
   957 F. Supp. 2d 1378 (N.D. Ga. 2013) ..................................................... 4

**RULES**

S.C. Code Ann. § 16-17-446(A) ..................................................................... 7

**STATUTES**

28 U.S.C. § 2342 ........................................................................................... 17

47 U.S.C. § 227 ..................................................................................... *passim*

47 U.S.C. § 402 ........................................................................................... 16

Pub. L. No. 114-74, 129 Stat. 584 (2015) ....................................................... 3

**OTHER AUTHORITIES**

137 Cong. Rec. 30,821 (1991) ......................................................................... 2

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   18 F.C.C. Rcd. 14,014 (July 3, 2003) ........................................................ 3

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   31 F.C.C. Rcd. 9074 (2016) ....................................................... 10, 19, 20

S. Rep. No. 102-178 (1991) ............................................................................. 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Defendants Charter Communications, Inc. ("Charter"), Spectrum Management Holding Company, LLC ("Spectrum"), and various unnamed Defendants, have raised a facial First Amendment challenge to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  As relevant here, § 227(b)(1)(A)(iii) of the TCPA prohibits the use of automated dialing systems to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States.  Plaintiff Steve Gallion claims that these two companies violated the Act by calling him using an automatic telephone dialing system, in an effort to sell or solicit their services.  In response, Defendants ask this Court to be the first to hold that the TCPA is a content-based regulation of speech that fails to survive strict scrutiny.

Every court to consider such a First Amendment challenge – including after the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and after the statute's central provision was amended in 2015 – has concluded that the statute is constitutional.  Indeed, a very recent decision of another Court of Appeals concluded that prior decisions upholding the statute as a content-neutral time-place-and-manner restriction that satisfies intermediate scrutiny were not undermined by *Reed. See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017) (noting that "[f]ederal law severely limits unsolicited calls to cell phones, 47 U.S.C. § 227(b)(1)(A)(iii). . . [and] ha[s] been sustained against constitutional challenge"), *cert denied*, 137 S. Ct. 2321 (2017); *id.* at 304 (citing approvingly, *e.g.*, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 663 (Jan. 20, 2016), and *Van Bergen, v. Minnesota*, 59 F.3d 1541, 1594-56 (8th Cir. 1995)).

If this Court were to conclude, contrary to those courts of appeals, that the TCPA is content based and therefore that strict scrutiny ought to apply, it should nevertheless uphold the narrow

statutory provision at issue here. Congress made extensive findings about the Act's purpose of protecting consumer privacy, an interest the Supreme Court has already acknowledged is compelling.  Section 227(b)(1)(A)(iii) is narrowly tailored to protect that interest, prohibiting only the sorts of automated communications that Congress found most problematic – only in the absence of consumer consent – and no more. As such, the TCPA survives even heightened scrutiny; every court that has determined that the TCPA is content based has held as much.   Accordingly, Defendants' challenge should be rejected.

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology — for example, computerized calls dispatched to private homes — prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 (2012).  The ubiquity of cell phones only aggravates such problems.  "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts.  Unlike other modes of communication, the telephone commands our instant attention."  *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005), *cert. denied*, 549 U.S. 1111 (2007) (mem.); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 781 (N.D.W. Va. 2017) ("When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, showing that it considered the interruptions that they cause and the time they cause consumers to waste to be one of the harms it sought to remedy. . . . 'They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed.'" (quoting 137 Cong. Rec. 30,821-30,822 (1991) (testimony of Senator Hollings))).

As pertinent here, the statute makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number

assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)(A)(iii).  Congress added the final clause of this provision, the government-debt exception, in November 2015 as part of the Bipartisan Budget Act of 2015.  *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015).  The statute has been interpreted to apply to both phone calls and text messages.  *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14,014, 14,115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

Plaintiff brings this putative action for damages under § 227(b)(1)(A)(iii) of the TCPA.  Mr. Gallion alleges that he "received numerous calls from Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, without . . . prior express consent."  *See* Complaint ¶ 21, ECF No. 1.  Plaintiff alleges that he received these calls even though he "is not a customer of Defendants' services and has never provided any personal information, including his cellular telephone number, to Defendants for any purpose whatsoever."  *Id.* ¶ 14.  According to Plaintiff, he received these calls "seeking to sell or solicit [Defendants'] business services" on a daily basis, and none were made for emergency purposes.  *Id.* ¶¶ 10, 13.  Plaintiff seeks to represent a class of individuals comprised of all persons in the country who, in the four years prior to the filing of this Complaint, received similar calls from Defendants.  *Id.* ¶ 15.

Defendants have moved for judgment on the pleadings on the sole basis that § 227(b)(1)(A)(iii) violates the First Amendment.  *See* Defendants' Motion for Judgment on the Pleadings (hereinafter "Defs. Mot."), ECF No. 18.  In their constitutional challenge to the TCPA, Defendants argue that strict scrutiny applies because (1) the government-debt exception in § 227(b)(1)(A)(iii) is content based; (2) § 227(b)(1)(A)(iii) discriminates among favored and

disfavored speakers; (3) the statute regulates substantially more than commercial speech; and (4) the statute authorizes the FCC to promulgate further content-based exceptions. *See id.* at 3-13. Defendants then contend that § 227(b)(1)(A)(iii) does not withstand strict scrutiny because its content-based distinctions do not advance any compelling government interest, and because those distinctions are not narrowly tailored. *See id.* at 13-24.

On November 13, 2017, the United States filed an acknowledgement of the constitutional challenge and requested an extension of time to permit a decision on intervention. *See* ECF No. 36. The Court granted the government's unopposed motion, ordering that the United States decide whether to intervene by January 9, 2018. *See* ECF No. 37.

## ARGUMENT

Courts have long held that the TCPA is a content-neutral, time-place-and-manner restriction on speech. *See Patriotic Veterans*, 845 F.3d at 306 (collecting cases upholding the TCPA's constitutionality under intermediate scrutiny and explaining that those decisions "have not been called into question by *Reed*"); *Campbell-Ewald Co.*, 768 F.3d at 871 (holding that § 227(b)(1)(A)(iii) is a valid time-place-and-manner restriction); *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013) ("The district court properly determined that the TCPA is a content-neutral law to which intermediate scrutiny must be applied. . . . . [It] furthers important government interests . . . [and] the TCPA's restrictions do not burden substantially more speech than is necessary to protect those interests."); *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995) (holding that the TCPA is content neutral and survives intermediate scrutiny); *Mey*, 245 F. Supp. 3d at 792 (holding after *Reed* that "[t]he TCPA is a permissible content-neutral regulation on its face"); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380-82 (N.D. Ga. 2013) (upholding § 227(b)(1)(A)(iii) as valid time, place, and manner restriction); *Woods v. Santander Consumer USA, Inc.*, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) (same, after *Reed*); *Bonin v.*

*CBS Radio, Inc.*, No. 16-cv-674 (E.D. Wis. Nov. 20, 2017), ECF 58 (Order Denying Motion to Dismiss) (holding that the TCPA, after *Reed*, is constituitonal regardless of the level of scrutiny that applies).[1]

Notwithstanding the unanimity of precedent finding the statute constitutional, Defendants argue that that the TCPA is a content-based restriction on speech that is subject to – and ultimately does not satisfy – strict scrutiny.  Citing the TCPA's exception for calls "made solely to collect a debt owed to or guaranteed by the United States," 47 U.S.C. § 227(b)(1)(A)(iii), and the absence of a waiver of sovereign immunity by Congress, Defendants assert that, after *Reed*, the statute must be considered content based.  They then argue that the statute is not narrowly tailored to a compelling government interest.  For the reasons that follow, however, Defendants' contentions are meritless.

## I.  BINDING NINTH CIRCUIT PRECEDENT CONTINUES TO RECOGNIZE THE TCPA AS A VALID, CONTENT-NEUTRAL RESTRICTION.

The Ninth Circuit has twice addressed the constitutionality of the same or a substantially similar provision of the TCPA that is at issue in this case.  The Ninth Circuit rejected these First Amendment challenges to the statute, holding each time that the Act withstands intermediate scrutiny.  *Campbell-Ewald Co.*, 768 F.3d at 871; *Moser*, 46 F.3d at 970.  That should be the beginning and the end of the Court's analysis, as that precedent remains binding on this Court.

In *Moser*, the court of appeals rejected a First Amendment challenge to 47 U.S.C. § 227(b)(1)(B), which makes it unlawful "to initiate any telephone call to any residential telephone

---

[1] Four courts have determined the TCPA is content based, but each has upheld the statute under strict scrutiny. *See Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017) (finding strict scrutiny applies after *Reed*, but TCPA, as amended in 2015, satisfies that standard); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017) (same), *appeal filed*, No. 17-80086 (9th Cir. 2017); *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) (same), *granting stay but denying motion to certify interlocutory appeal*, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017); *Greenley v. LIUNA*, -- F. Supp. 3d --, 2017 WL 4180159 (D. Minn. Sept. 19, 2017) (same).

line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." The Ninth Circuit held that this provision is a content-neutral, time-place-and-manner restriction because it "regulates all automated telemarketing calls without regard to whether they are commercial or noncommercial." *Moser*, 46 F.3d at 973. Applying intermediate scrutiny, *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), the Ninth Circuit found that it satisfied that level of review because "Congress accurately identified automated . . . calls as a threat to privacy." *Moser*, 46 F.3d at 974. The court of appeals went on to conclude that the statute was not impermissibly under-inclusive. *Id.*

More recently, in *Campbell-Ewald Co.*, 768 F.3d 871, the Ninth Circuit reaffirmed its reasoning in *Moser* and upheld the constitutionality of § 227(b)(1)(A)(iii), the very provision at issue here. The court recognized that *Moser* had rightly treated the TCPA as a content-neutral, time-place-and-manner restriction, *id.* at 876, and further concluded that the Act serves a significant government interest in protecting privacy. *Id.* at 876-77. The *Campbell-Ewald Co.* court also found § 227(b)(1)(A)(iii) to be narrowly tailored and to leave open ample alternative channels for the communication of information. *Id.* Thus it, too, held that the statute satisfies intermediate scrutiny.

Nothing in *Reed* undermines the conclusion of the Ninth Circuit in these cases. The lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*. The sign code at issue in *Reed* purported to impose general limits on the display of outdoor signs, but was in fact riddled with twenty-three different exemptions. *Reed*, 135 S. Ct. at 2224. It aimed to maintain the town's aesthetic appeal and to promote traffic safety, *Reed*, 135 S. Ct. at 2231, but it distinguished between signs (political, ideological, etc.) that seemed equally likely to detract from the town's beauty or add to its traffic, *see, e.g.*, *id.* at 2231-32. The Supreme Court therefore concluded that the ordinance was content based and could not survive strict scrutiny.

The TCPA, by contrast, contains a universally applicable restriction with a narrow,

relationship-based exception.  Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers."  S. Rep. No. 102-178, at 1 (1991).  As a result, as relevant here, the Act prohibits one narrow category of calls and text messages to wireless numbers – *viz.*, those made using an ATDS or an artificial or pre-recorded voice and directed at someone who has not consented to receive the calls. 47 U.S.C. § 227(b)(1)(B).  The statute does not differentiate among calls depending on whether they are ideological, political, or commercial in nature.  *Id.* § 227(b)(1)(A)(iii); *cf. Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015) (invalidating, after *Reed*, South Carolina's anti-robocall statute, which singled out, among a few other types of calls, those which were "of a political nature").  And, in any event, *Reed* did not purport to overrule existing precedent or radically alter First Amendment jurisprudence, as courts have recognized. [2]  *See, e.g.*, *Patriotic Veterans*, 845 F.3d at 306; *Working Am., Inc. v. City of Bloomington*, 142 F. Supp. 3d 823, 830 (D. Minn. 2015) (explaining that *Reed* simply "reiterated the framework that determines whether governmental regulation of speech is content based or content neutral," rather than fundamentally altering First Amendment jurisprudence).  For these reasons, the Ninth Circuit's prior decisions upholding the TCPA as a valid time-place-and-manner restriction remain binding

---

[2] Nor do post-*Reed* decisions require a different approach.  To be sure, a smattering of courts has used *Reed* to invalidate or enjoin enforcement of various statutes.  *See, e.g.*, *Cahaly*, 796 F.3d at 402; *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (panhandling ordinance), *cert denied*, 136 S. Ct. 1173 (2016); *Rideout v. Gardner*, 123 F. Supp. 3d 218 (D.N.H. 2015) (New Hampshire statute that prohibited photographing marked ballots), *cert. denied*, 137 S. Ct. 1435 (2017).  *But see Citizens for Free Speech, LLC v. Cty. of Alameda*, 114 F. Supp. 3d 952, 969 (N.D. Cal. 2015) (Breyer, J.) (suggesting *Reed*'s application is limited to ordinances that impose "temporal or geographic restrictions on different categories of . . . signs").  For the reasons set forth above, the TCPA context is distinct.  Indeed, the TCPA and the statute at issue in *Cahaly* bear little resemblance to one another, for the latter "prohibit[ed] only those robocalls that [we]re 'for the purpose of making an unsolicited consumer telephone call' or [we]re 'of a political nature including, but not limited to, calls relating to political campaigns.'"  796 F.3d at 402 (quoting S.C. Code Ann. § 16-17-446(A)).  So it too "raise[d] the specter of impermissible content discrimination," *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 449 (2002), in a manner quite unlike the TCPA.

1    on this Court.[3]

2    **II.      THE GOVERNMENT-DEBT EXCEPTION DOES NOT RENDER THE TCPA CONTENT**
3    **BASED.**

4        Defendants largely rely on § 227(b)(1)(A)(iii)'s exception for calls "made solely to collect

5    a debt owed to or guaranteed by the United States" to establish that the TCPA is content based.

6    Defendants, however, lack standing to challenge the exception, which, in any event, is not content

7    based.

8        **A. Defendants Lack Standing to Challenge the Government-Debt Exception.**

9        This Court lacks jurisdiction over a challenge to the government-debt exception in this case

10   because its invalidation would have no effect on the parties here, who are neither benefitted nor

11   burdened by that exception.  If the government-debt exception were held unconstitutional, the

12   remedy would be to strike the offending exception – a 2015 amendment to a statute enacted in 1991

13   – not to invalidate the entirety of the TCPA.  *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931-32 (1983)

14   ("[T]he invalid portions of a statute are to be severed 'unless it is evident that the Legislature would

15   not have enacted those provisions which are within its power, independently of that which is not.'"

16   (citation omitted)); *Woods*, 2017 WL 1178003, at *3 n.6 ("Here, there is no evidence that Congress

17   would not have enacted the TCPA without the exception for government debt.  To the contrary,

18   Congress did enact the TCPA without the exception for government debt, and the version of the

---

21   [3] Defendants briefly note that *Moser* dealt with a different provision of the TCPA and
22   therefore should not be persuasive, *see* Defs. Mot. at 5 n.2, but they fail to address *Campbell-Ewald*
23   and its continuing relevance in the Circuit.  Further, some of Defendants' arguments – including
     that the provision permitting the FCC to promulgate additional regulations is content based and that
24   Congress's decision not to waive sovereign immunity in the TCPA renders the statute speaker based
     – were implicitly rejected by *Campbell-Ewald*, which could have held that the statute merits strict
25   scrutiny for either reason.
         Two other district courts in the Ninth Circuit found that strict scrutiny applies to the TCPA,
26   notwithstanding *Campbell-Ewald*, but they also both held that the statute survives strict scrutiny;
     those two courts have since certified their decisions for interlocutory review by the Ninth Circuit.
27   *See Brickman v. Facebook, Inc.*, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) (certifying appeal
28   pursuant to 28 U.S.C. § 1292(b)), *appeal filed*, No. 17-80080 (9th Cir.); *Holt v. Facebook*, No. 16-
     cv-2266 (N.D. Cal. May 2, 2017), ECF No. 86 (same), *appeal filed*, No. 17-80086 (9th Cir.).

TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country.").

In other words, because the 2015 amendment is indisputably severable, Defendants' injuries would not be redressed even if the court were to declare it unconstitutional. *See, e.g.*, *Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998) (holding that plaintiff lacked standing to challenge portion of program that was severable from the remainder); *Matter of Extradition of Lang*, 905 F. Supp. 1385, 1399 (C.D. Cal. 1995) ("[R]edressability cannot be shown here because the unconstitutional portion of the extradition statute can be severed from the remainder."); *Klaver Const. Co. v. Kansas Dep't of Transp.*, 211 F. Supp. 2d 1296, 1304-05 (D. Kan. 2002) (same).   Other circuits have adopted this approach to severable exceptions when considering state statutes similar to the TCPA.   *See, e.g.*, *Gresham v. Swanson*, 866 F.3d 853, 854 (8th Cir. 2017) (declining to consider severable content-based exception in determining constitutionality of state-law TCPA analog*), cert. denied,* No. 17-676 (2018); *Patriotic Veterans*, 845 F.3d at 305 ("Potential problems with how [the exemption in] subsection (a)(3) affects other persons do not give plaintiff standing to complain about [the general prohibition on autodialed calls in] subsection (b), its target in this suit."); *Van Bergen*, 59 F.3d at 1551 ("Even assuming, without deciding," that the exception is content based, if "it does not apply to [the party challenging the statute, it] is not before the court in this case.").[4]   These state laws, like the TCPA, contain narrow carve-outs from the statutes' otherwise universally applicable restrictions.   Following the approach of these courts of appeals, Defendants cannot challenge the government-debt exception, the

---

[4] Only one court has expressly held that a TCPA defendant whose liability would not be affected by a holding that the government-debt exception is unconstitutional, nevertheless has standing to challenge it. *See Mejia*, 2017 WL 3278926, at *12-*13.   The United States respectfully submits, however, that the *Mejia* court's analysis was flawed in several respects.   Most importantly, the court incorrectly concluded that severability "is not a threshold issue implicating a party's standing to challenge constitutionality in the first instance." *Id.* at *13.   *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931 n.7 (1983).

invalidation of which would have no effect on their liability under the TCPA's universally applicable, content-neutral restriction.

## B.  The Government-Debt Exception is Not Content or Viewpoint Based.

Even if the Court finds that it may consider the constitutionality of the government-debt exception in this case, that exception does not undermine the conclusion that the TCPA is a valid time-place-and-manner restriction.  This is because the exception is relationship based, rather than content based:  It turns not on what the caller proposes to say, but on the relation between the caller (*i.e.*, the owner or servicer of the debt) and the recipient (*i.e.*, the person responsible for paying that debt).  *See Mey*, 245 F. Supp. 3d at 792 (holding that government-debt exception to the TCPA is based on the relationship between the speaker and the recipient, not the content of the message).  Debt collection, by its very nature, is limited to communications with those who have a legal relationship to the debt.  Indeed, when promulgating implementing rules for this exception, the FCC clarified that for a call to be made "solely to collect" a government-backed debt, it must "be made to the debtor or another person or entity legally responsible for paying the debt."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "FCC 2016 Order"), 31 FCC Rcd. 9074, 9083 (2016).[5]

Multiple courts of appeals have held that relationship-based exceptions to content-neutral restrictions on speech do not render those restrictions content based.  *See Patriotic Veterans*, 845 F.3d at 304-05 (exceptions to Indiana anti-robocall statute, including for "[m]essages from school

---

[5] The court in *Brickman* – the first to conclude that the TCPA is content based – determined, without much analysis, that the government-debt exception makes no explicit reference to the relationship of the parties and therefore is a content- rather than relationship-based exception.  *See* 230 F. Supp. 3d at 1045.  However, that court failed to consider that the statutory phrase "solely to collect a debt," 47 U.S.C. § 227(b)(1)(A)(iii), necessarily implies that relationship.  Even the *Greenley* court – the most recent court to find that the TCPA is content based – acknowledged that the government-debt exception "in one sense . . . *is* relationship based—it arises from the creditor-debtor relationship between the government and the recipient of the communication."  2017 WL 4180159, at *12.

districts to students, parents, or employees," were not content based because they "depend on the relation between the caller and the recipient, not on what the caller proposes to say"); *Van Bergen*, 59 F. 3d at 1550 (state anti-robocall statute with "central provision" that "applies to all callers, with three exceptions . . . based on relationship rather than content" was not content based). Like the exceptions in *Van Bergen* and *Patriotic Veterans*, the government-debt exception is a relationship-based carve-out from a content-neutral restriction, and therefore does not render the TCPA content based.

Furthermore, the government-debt exception is in line with well-accepted distinctions between government and private speech. The government frequently subjects its own conduct or speech to different requirements than those applicable to private actors, and such provisions have never been thought to raise First Amendment concerns. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-74 (2016) (discussing governmental immunity under TCPA). There is no doubt that the TCPA does not apply to the government itself, *see id.* at 672 ("The United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions because no statute lifts their immunity."), and the government-debt exception simply acts to protect those who are collecting debts that the government could undoubtedly collect in the same manner itself without running afoul of the First Amendment. *See Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1047 (N.D. Cal. 2017) ("[T]he government-debt exception to the TCPA does not present a First Amendment problem because it merely carves out an exception for something the federal government is already entitled to do, and government speech is exempt from First Amendment scrutiny." (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009))).

Defendants are also incorrect in suggesting that the government-debt exception discriminates based upon viewpoint because it exempts calls to collect, but not to consolidate or contest, a government-backed debt. Viewpoint discrimination occurs when the application of the

provision turns on "the specific motivating ideology or the opinion or perspective of the speaker. . . ." *Rosenberger v. Rector and Visitors of UVA*, 515 U.S. 819, 829 (1995).  Here, the called party either legally owes a debt to the caller – a representative of the government or a purchaser of government debt – or (s)he does not; no opinion, ideology, or perspective is involved in determining whether the caller and the called party are related in this way.  If anything, the "solely to collect" language simply makes explicit the implied relationship between the caller and the called party at issue in the government-debt exception.

## III.    THE TCPA DOES NOT DISCRIMINATE AMONG SPEAKERS.

Defendants next contend that the exclusion of government speech from the TCPA constitutes speaker-based discrimination.  *See* Defs. Mot. at 7-9.  In other words, Defendants apparently believe that the fact that Congress chose not to waive sovereign immunity in the TCPA – a common attribute of First Amendment restrictions – somehow merits strict scrutiny.  Yet the Supreme Court has never suggested that the absence of a waiver of sovereign immunity in an otherwise content-neutral law renders that law content based or speaker based.  To the contrary, the Court has explained that "[t]he Free Speech Clause [of the First Amendment] restricts government regulation of private speech; it does not regulate government speech . . . A government entity may exercise this same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message."  *Summum*, 555 U.S. at 467-68.  As one court recently explained in rejecting Defendants' argument that the TCPA draws distinctions among speakers,

> the mere absence of [TCPA] liability for government speakers does not raise a First Amendment problem.  First, government speech is exempt from First Amendment scrutiny. . . .  And second, the absence of TCPA liability for government speakers is only a confirmation of the general principle of sovereign immunity.  To find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict

private speech, so as to avoid the restriction's being treated as speaker based.

*Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926, at *15 (S.D.N.Y. Aug. 1, 2017).

In spite of these well-settled First Amendment principles, Defendants believe various out-of-circuit decisions holding unconstitutional various sign ordinances and other restrictions support their contention that the TCPA is speaker based. Yet these cases do not stand for the propositions for which Defendants cite them. For instance, in *Solantic, LLC v. Neptune Beach*, 410 F.3d 1250 (11th Cir. 2005), a sign code imposed content-neutral restrictions, including on size and location, on the posting of signs, but also contained seventeen specific exemptions – including for "[f]lags and insignia of any government, religious, charitable, fraternal, or other organization." *Id.* at 1257. The sign ordinance in *Solantic* thus contained a variety of exemptions, including but not limited to exemptions for some forms of government speech. Further, it closely resembled the one at issue in *Reed* – and, in fact, the Supreme Court acknowledged as much. *See Reed*, 135 S.Ct. at 2232. The Eleventh Circuit in no way suggested that the application of strict scrutiny in *Solantic* turned on its exemptions for government speakers, but rather determined that "many of the sign code's [seventeen] exemptions are plainly content based," including those that exempted signs guiding traffic and parking, memorial signs, and signs constituting holiday lights or decorations. [6] *See* 410 F.3d at 1264 - 65 ("Thus, a homeowner could plant a giant illuminated Santa Claus or a jack-o-lantern in his front yard, but not a figure of, say, the President or the Mayor."); *see also Demarest v. City of Leavenworth*, 876 F. Supp. 2d 1186, 1196 (E.D. Wash. 2012) ("The *Solantic* case adopts an overly narrow, restrictive view of the concept of 'content-neutral' which differs from the Ninth

---

[6] The same is true of *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993) and *Bonita Media Enters., LLC v. Collier Cty. Code Enf't Bd.*, 2008 WL 423449 (M.D. Fla. Feb. 13, 2008). In neither case did the court's holding turn on the exclusion of government speech, and neither case undermines the longstanding principle that the government may subject its own speech to different rules without contravening the First Amendment.

1  Circuit and other precedent. . . .").[7]

2       Nor can Defendants demonstrate that the government-debt exception "suppresses" non-

3  governmental speech while favoring the government's speech.[8]  As previously explained, a statute

4  does not "favor" government speech simply because it does not waive sovereign immunity.  And

5  the TCPA does not suppress *any* speech whatsoever; rather, it simply requires that a caller secure

6  the consent of the called party before employing ATDS technology to place a call or message.[9]

7

8      **IV.**    **DEFENDANTS' ADDITIONAL ARGUMENTS FOR STRICT SCRUTINY ARE MERITLESS.**

9          **A. The TCPA's Application to Commercial Speech Does Not Alter the Standard of Review.**

10

11      Defendants make several arguments about the TCPA's application to commercial speech,

12  including that (1) the TCPA cannot be viewed under the framework for commercial speech because

13  it regulates both commercial and non-commercial speech; (2) the statute would be substantially

14  overbroad if considered under the framework for commercial speech; (3) the government-debt

15  exception evinces a "preference for commercial speech"; and (4) the government-debt exception

16

17  _____

18     [7] As with the other cases Defendants cite, the only case from the Ninth Circuit they have identified in support of their proposition that the TCPA discriminates between speakers involves a sign code that imposed a variety of different rules, not a generally applicable prohibition for which sovereign immunity had not been waived.  *See Citizens for Free Speech, LLC v. Alameda*, 194 F. Supp. 3d 968 (N.D. Cal. 2016).  The Court in *Alameda* also noted that "[t]he sign code in *Reed* was not speaker based . . . and therefore *Reed*'s commentary on speaker-based distinctions is arguably dicta."  *Id.* at 983 (citations omitted).

22     [8] Defendants' efforts to find support for this proposition in an opinion concurring in the 1972 decision of the D.C. Circuit in *Women Strike for Peace v. Morton*, 472 F.2d 1273, and in a district court decision from that circuit, are unavailing.  *See Defs. Mot.* at 10 (citing *Morton* and *A.N.S.W.E.R. Coal. v. Kempthorne*, 537 F. Supp. 2d 183 (D.D.C. 2008)).  Those cases involved discretionary permitting schemes and the plaintiffs did not challenge the schemes themselves, but rather "the deviation . . . from that carefully crafted system in order to afford preferential treatment to supporters of the government."  *Kempthorne*, 537 F. Supp. 2d at 201.  Thus, the facts and the nature of the First Amendment issues in those cases were markedly distinct from those in this case.

26     [9] This Court also lacks jurisdiction to consider Defendants' argument that the TCPA's supposed preference for government speakers is compounded by the regulatory exemption for government agents acting within the scope of their agency; that exemption was created by an FCC regulation promulgated pursuant to the Commission's authority under the TCPA, and its validity cannot be examined by a district court.  *See infra* Section IV(b).

discriminates among commercial messages.  *See* Defs. Mot. at 12-13.  The first and second arguments would be relevant only if the United States sought to argue that the TCPA is constitutional because it regulates solely commercial speech.  But the United States has not advanced such an argument; rather, the government seeks solely to defend the TCPA as a valid, content-neutral time-place-and-manner restriction.[10]  And Defendants' third and fourth arguments simply reiterate their contentions about the government-debt exception, regardless of whether the speech at issue is viewed as commercial or non-commercial.  The arguments therefore fail for the same reasons.  *See supra* Section II(b).  Thus, Defendants' arguments regarding commercial speech are irrelevant to their facial challenge to the statute.

### B. The FCC's Orders Do Not Render the Statute Content Based.

The TCPA allows the FCC to exempt calls where doing so would "not adversely affect the privacy rights" that the TCPA seeks to protect.  *See* 47 U.S.C. § 227(b)(2)(B)(ii), (b)(2)(C).  Although Defendants state that they do not rely primarily on the FCC orders issued pursuant to this provision for their contention that the TCPA is content based, they do assert that the provision's "authorization for the FCC to establish additional content-based exemptions compounds the problem" created by the government-debt exception.  *See* Defs. Mot. at 5-6.  Yet every court to consider the provision – including after *Reed* – has determined that a statutory provision creating the potential for the FCC to issue content-based regulations does not create a constitutional problem with the statute itself.  *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1045 ("Although the statute empowers the FCC to create exceptions that promote the interest of privacy rights, there are content-neutral ways for the FCC to accomplish this . . . .  The mere possibility that the FCC could

---

[10] Where other TCPA defendants have argued that the statute is unconstitutional *as applied* to their speech, and where the speech at issue is commercial, the United States has raised a defense to the as-applied challenge contending that the TCPA's application to commercial speech is constitutional under the framework of *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980).  But Defendants have not raised an as-applied challenge here.

create a content-based exception at some later time does not render this exception to be content-based itself."); *accord Holt v. Facebook, Inc.,* 240 F. Supp. 3d 1021, 1032-33 (N.D. Cal. 2017); *Greenley v. LIUNA*, 2017 WL 4180159, at *13 (D. Minn. Sept. 19, 2017) ("[T]his provision is not facially or inherently content-based because there are content-neutral ways for the FCC to implement it, including relationship-based exceptions.").

Even assuming for the sake of argument that such orders did create content-based exemptions that do not withstanding strict scrutiny, it would not follow from such a finding that § 227(b)(1)(A)(iii) – a separate statutory provision that is clearly content neutral – is likewise unconstitutional. Unconstitutional agency action cannot call into doubt an otherwise constitutional Act of Congress; to accept the contrary suggestion would be to endorse the incorrect proposition that, when an agency issues an order or regulation pursuant to a statute, the agency is in fact amending the statute – something the agency has no power to do. *See, e.g.*, *Dalton v. United States*, 816 F.2d 971, 974 (4th Cir. 1987) (explaining that an agency "lacks power even by a regulation adopted after strict compliance with the Administrative Procedure Act . . . to repeal, modify, or nullify a statute" (citation omitted)).

Nor is the purportedly "unbridled discretion in promulgating such content-based exemptions," *see* Defs. Mot. at 6, cause for concern, because FCC orders are not insulated from review. Rather, review is simply channeled to the courts of appeals. *See* 47 U.S.C. § 227(b)(2)(B)(ii), § 227(b)(2)(C). In fact, this Court is jurisdictionally barred from considering any implied or collateral challenge to the FCC orders issued pursuant to this provision. The Communications Act of 1934 establishes the exclusive mechanism for challenging the validity of final orders issued by the FCC. Section 402(a) of that statute specifies that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter . . . shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28 [of the United States

Code]." 47 U.S.C. § 402(a).  The cross-referenced chapter of the U.S. Code, also known as the Administrative Orders Review Act or the Hobbs Act, provides in relevant part that "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), *or to determine the validity of* all final orders of the Federal Communications Commission made reviewable by [47 U.S.C. § 402(a)]."  28 U.S.C. § 2342(1) (emphasis added).  Defendants therefore cannot, under the guise of a constitutional challenge to the TCPA, place the legitimacy of those FCC orders in question in a district court proceeding.  *See FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984); *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 397 (9th Cir. 1996) (explaining that district courts lack jurisdiction to review FCC final orders where the "proceedings would have required the district court to enjoin, set aside, suspend, or determine the validity of the [order]").

Here, the practical effect of a ruling that the TCPA is unconstitutional would be the invalidation of the FCC orders promulgated pursuant to one of its provisions; thus, it does not matter that Defendants do not claim to directly attack the regulations themselves.[11]  *See Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1195 (9th Cir. 2008) (refusing to permit plaintiff, "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress"); *U.S. W. Comm'cn., Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002) ("Properly promulgated FCC regulations currently in effect must be presumed valid for the purposes of this [case]" and "no question as to their validity can be before [the district court].").

For this reason, all but one of the courts examining the TCPA after *Reed* have declined to

---

[11] Defendants' assertion that they are not directly challenging the FCC regulations themselves is dubious.  *See* Defs. Mot. at 6 (describing regulatory exemptions for package-delivery notifications, healthcare appointments, and data-breach notifications, and contending that "[t]he upshot of this patchwork of prohibitions and exemptions is that the lawfulness of an autodialed or prerecorded call turns entirely on its subject matter (*i.e.*, content)").  This contention falls squarely within the scope of the Hobbs Act, and thus this Court lacks jurisdiction to consider it.

consider specific FCC orders in determining whether the statute is content based.  *See, e.g.*, *Greenley*, 2017 WL 4180159, at *13 ("Because this Court lacks jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court does not consider those exceptions for the purpose of this analysis [of the constitutionality of the TCPA]."); *Mejia*, 2017 WL 3278926, at *15 n.7 ("To the extent that Time Warner seeks to challenge any particular FCC order promulgated under that provision, this Court lacks jurisdiction to consider such a challenge."); *but see Am. Ass'n of Political Consultants, Inc. v. Sessions*, 2017 WL 1025808, at *2 (E.D.N.C. Marc. 15, 2017).

### V. IF THE COURT FINDS THE TCPA CONTENT BASED, IT SHOULD CONCLUDE THAT THE STATUTE SATISFIES STRICT SCRUTINY.

Even if this Court decides that the TCPA is content based, the statute should still be upheld under strict scrutiny.  All four courts that have found the TCPA content based after *Reed* have agreed that the TCPA survives strict scrutiny.  *See Brickman*, 230 F. Supp. 3d at 1045-49; *Holt*, 240 F. Supp. 3d at 1033; *Mejia*, 2017 WL 3278926, at *17; *Greenley*, 2017 WL 4180159, at *14. This Court should not be the first to hold that the TCPA is unconstitutional.

### A. The TCPA Serves a Compelling Government Interest.

Defendants contend that prohibiting the nonconsensual use of ATDS technology for all calls and messages except those made to collect government-backed debt does not serve a compelling interest.  In other words, they assert that because the government-debt exemption does not serve a compelling interest, § 227(b)(1)(A)(iii) as a whole also does not.  But this frames the compelling-interest inquiry too narrowly: the question is whether the statute *as a whole* serves a compelling government interest, not whether each provision in isolation does.  Under that framework, it is by now well settled that the government has a compelling interest in protecting personal and residential privacy.  *See, e.g.*, *Carey v. Brown*, 447 U.S. 455, 471 (1980) (government's interest "in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and

civilized society"); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("One important aspect of residential privacy is the protection of the unwilling listener."); *Patriotic Veterans*, 845 F.3d at 305-06 ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.  Most members of the public want to limit calls, especially cell-phone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) in other ways.").

Every court to consider the TCPA, including its 2015 amendment, has concluded that it serves a compelling interest.  *See, e.g.*, *Brickman*, 230 F. Supp. 3d at 1046 ("[T]he Court holds the TCPA [as amended] serves a compelling government interest in promoting residential privacy."); *Holt*, 240 F. Supp. 3d at 1034 (same);  *Mejia*, 2017 WL 3278926, at *16 (compelling government interest in protecting residential privacy "also extend[s] to cell phones"); *Greenley*, 2017 WL 4180159, at *13 ("That this" – protecting residential privacy – "is a compelling interest is well-established.").  None of these courts suggested, as Defendants do, that the TCPA's application to mobile phones in any way diminishes the compelling interest the statute serves.  *See Campbell-Ewald Co.*, 768 F.3d at 876-77 ("[T]here is no evidence that the government's interest in privacy ends at home . . . [and] to whatever extent the government's significant interest lies exclusively in residential privacy, the nature of cell phones renders the restriction of unsolicited text messaging all the more necessary to ensure that privacy.  After all, it seems safe to assume that most cellular users have their phones with them when they are at home. . . . .  [I]n many households a cell phone *is* the home phone . . . [so] prohibiting automated calls to land lines alone would not adequately safeguard the stipulated interest in residential privacy.").

Furthermore, the statute's narrow carve-out for government debt also serves a compelling interest.  In providing an exception for entities acting to recover funds guaranteed by the United

States, the provision serves the government's compelling interest in protecting the public fisc.  *See Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1227 (6th Cir. 1997) ("Protecting the public fisc ranks high among the aims of any legitimate government.").  As the *Mejia* court most recently explained, "the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts."  2017 WL 3278926, at *16 (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366 (1943)).  Defendants point to the paucity of legislative history identifying the specific interest behind the exception but, as the FCC suggested last year, the motivation for the provision is no mystery.  "[D]ebt servicers and collectors emphasize the important need served by such [ATDS] calls, *i.e.*, that they can help educate debtors, often younger individuals, about repayment options that can save them from substantial debt from which they may not recover.  Consumer groups and our federal partners generally agree on the value of such calls."  FCC 2016 Order, 31 FCC Rcd. at 9078.  Thus, § 227(b)(1)(A)(iii) serves the compelling interest of protecting the unwilling listener's privacy, while at the same time protecting the public fisc, via the government-debt exception.

## B.  The TCPA is Neither Over- Nor Under-Inclusive.

Defendants contend that § 227(b)(1)(A)(iii) is not narrowly tailored because it is both over- and under-inclusive.  They argue that the statute is under-inclusive because "[a] statutory scheme that contains a sweeping prohibition on all autodialed and prerecorded voice calls by private parties, but nevertheless permits . . . calls to be placed by the government, its agents, and by private actors collecting private, government-backed debts . . . does not rationally serve any privacy interest at all."  Defs. Mot. at 19.  But this argument ignores the fact that the exception is cabined by the statute's express grant of authority to the FCC to "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States."  *See* 47 U.S.C.

§ 227(b)(2)(H).  This provision permits the FCC to craft limits on the exception to balance the need for privacy with the need to protect the public fisc.  *See Mejia*, 2017 WL 3278926, at *17.  And, indeed, the FCC has exercised this authority.  *See* FCC 2016 Order, 31 FCC Rcd. at 9088-94 ("[W]e limit the number of federal debt collection calls to three in thirty days . . . [C]onsumers may request that the calls stop if they do not find the calls or the information they contain useful . . . [C]alls may not exceed 60 seconds . . . .").  In contrast to the conduct at issue in this litigation, the government-debt exception is thus a minor carve-out from the otherwise "sweeping prohibition" applicable to all other speakers and messages.  *See* Compl. ¶¶ 10 (alleging that Plaintiff received "daily calls . . . seeking to sell or solicit" business from Defendants), 14 (alleging that Plaintiff received calls from Defendants even though he "is not a customer of Defendants' services").  Of course, the exception is also "limited by the fact that such calls would only be made to those who owe a debt to the federal government."  *Brickman*, 230 F. Supp. 3d at 1047.  The government-debt exception thus does not render § 227(b)(1)(A)(iii) under-inclusive.

Defendants additionally contend that the statute is over-inclusive, because less-restrictive alternatives exist.  "Less restrictive alternatives [must] be *at least as effective* in achieving the legitimate purpose that statute was enacted to serve."  *Reno v. Am. Civil Lib. Union*, 521 U.S. 844, 874 (1997) (emphasis added).  Defendants point to a provision elsewhere in the TCPA that "effectively prohibits callers from tying up recipients' phone lines."  *See* Defs. Mot. at 22-24.  That provision, however, concerns the transmission of "any artificial or prerecorded voice message via telephone," and mandates that such messages "will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up."  47 U.S.C. § 227(d)(3)(B).  It is therefore significantly less effective than § 227(b)(1)(A)(iii) at protecting residential and personal privacy, because it does nothing to prevent the prerecorded call from being made in the first instance and places the burden on the called party to hang up in

order to avoid the unwarranted intrusion – and to do so in response to every prerecorded call.  It thus imposes a far greater burden on the called party than does § 227(b)(1)(A)(iii), while only marginally diminishing the intrusion of unwanted calls.

Defendants also suggest that Congress could have adopted other less-restrictive alternatives such as time-of-day limitations, mandatory disclosure of caller identity, and do-not-call lists.  Yet courts have unanimously rejected these same three alternatives, holding that they would not be as effective as the TCPA in protecting the public's privacy.  *See Brickman*, 230 F. Supp. 3d at 1048-49 ("Time-of-day limitations would not achieve the same privacy objectives because even though such a restriction may designate the span of time in which callers can intrude on an individual's privacy, it would also designate a time for intrusive phone calls.  Mandatory disclosure of a caller's identity and disconnection requirements would also not be as effective in achieving residential privacy because these would not prevent the privacy intrusion from the phone call in the first place.  Do-not-call lists would also not be a plausible less restrictive alternative because placing the burden on consumers to opt-out of intrusive calls, rather than requiring consumers to opt-in, would obviously not be as effective in achieving residential privacy."); *accord Holt*, 240 F. Supp. 3d at 1034; *Mejia*, 2017 WL 3278926, at *17 ("Particularly in light of *Reed*'s capacious understanding of content discrimination, this Court is unwilling to let perfect tailoring be the enemy of narrow tailoring." (citing *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1671 (2015))); *Greenley*, 2017 WL 4180159, at *14.  Defendants' citations to *Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015), and *Gresham v. Rutledge*, 198 F. Supp. 3d 965, 971-73 (E.D. Ark. 2016) – which determined that these three alternatives are less restrictive than the overtly content-based state-law TCPA analogs at issue in those cases – do not alter the unanimous conclusion that those alternatives are not as

effective as the TCPA.[12]  Thus, the TCPA is narrowly tailored and so survives strict scrutiny.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges that the Court uphold the constitutionality of Section 227(b)(1)(A)(iii) of the TCPA and deny Defendants' motion.

Respectfully submitted this 9th day of January, 2018,

CHAD A. READLER
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Anjali Motgi*
ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879 | Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

*Counsel for the United States of America*

---

[12] In any event, even cursory review of the cited cases reveals that the statutes there are readily distinguishable from the TCPA.  *See Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015) (South Carolina anti-robocall statute singling out, among other things, calls "of a political nature" was not narrowly tailored, where state had not challenged the efficacy of less-restrictive alternatives); *Gresham v. Rutledge*, 198 F. Supp. 3d 965, 971-73 (E.D. Ark. 2016) (Arkansas anti-robocall statute banning the use of ATDS *only* for sale of goods or services or political campaigns was under-inclusive).

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3

4

5

I hereby certify that on January 9, 2018, a copy of the foregoing pleading was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

6

7

8

9

10

11

*/s/ Anjali Motgi*
ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879 | Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28