Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE GALLION, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>    vs.<br><br>CHARTER COMMUNICATIONS, INC., and SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, and DOES 1-10, inclusive,<br><br><br><br>Defendants.<br>_____ | Case No. 5:17-cv-01361-CAS-KKx<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADRIAN R. BACON**<br><br>Hon. Hon. Christian A. Snyder<br>Date: February 5, 2018<br>Time: 10:00 A.M.<br>Dept.: 8D |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Table of Contents

I.    INTRODUCTION ............................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 2

III.  THE FIRST AMENDMENT AND THE TCPA ............................ 5

IV.   LEGAL STANDARD ......................................................... 5

V.    LEGAL ARGUMENT ........................................................ 5

   A.  Defendants Fail to Demonstrate That the Statute's Allegedly
       Unconstitutional Application to Fully Protected Speech Is Substantial in
       Comparison to Its Undoubtedly Legitimate Application to Commercial
       Speech ...................................................................... 7

   B.  The TCPA Is a Permissible Content-Neutral Time, Place, or Manner
       Restriction .................................................................. 8

      1.  The Ninth Circuit's Decisions Upholding the TCPA Remain
          Authoritative ........................................................... 8

      2.  The Government-Debt-Collection Exception Does Not Make the TCPA
          "Content-Based" ....................................................... 11

      3.  Defendants' Reliance on *Reed* and *Cahaly* Is Misplaced .................... 12

      4.  The TCPA Is Not "Viewpoint-Based" ................................. 13

   C.  The TCPA Would Easily Satisfy Strict Scrutiny If It Were Applicable .. 14

   D.  The Government-Debt-Collection Exception Is Severable ................... 19

VI.   CONCLUSION ............................................................ 19

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# Table of Authorities

C<small>ASES</small>

*Bland v. Fessler,*
    88 F.3d 729 (1996).................................................................... 10-11

*Boyle v. United Technologies Corp.,*
    487 U.S. 500 (1988)...................................................................... 18

*Brickman v. Facebook, Inc.,*
    230 F. Supp. 3d 1036 (N.D. Cal. 2017)..............................6, 9, 15-16, 18-19

*Brown v. United States,*
    2010 WL 2719967 (S.D. Cal. July 8, 2010) ................................... 5

*Brock v. Pierce County,*
    476 U.S. 253 (1986)...................................................................... 18

*Cahaly v. Larosa,*
    796 F.3d 399 (2015)................................................................. 12-13

*Contest Promotions, LLC v. City & County of San Francisco,*
    874 F.3d 597 601 (9th Cir. 2017) .................................................. 7

*Doleman v. Meiji Mut. Life Ins. Co.,*
    727 F.2d 1480 (9th Cir. 1984) ...................................................... 5

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,*
    132 F.3d 526 (9th Cir. 1997) ....................................................... 5

*Expressions Hair Design v. Schneiderman,*
    137 S. Ct. 1144 (2017)................................................................. 7

*Florida Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995)..................................................................... 15

*Frisby v. Schultz,*
    487 U.S. 474 (1988)..................................................................... 15

*Gomez v. Campbell-Ewald Co.,*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

768 F.3d 871 (9th Cir. 2014) ..........................................................4-6, 8-10

*Greenley v. Laborers' International Union of North America,*

    __ F. Supp. 3d __, 2017 WL 4180159 (D. Minn. Sept. 19, 2017) ... 9, 15, 18

*Gresham v. Picker,*

    214 F. Supp. 3d 922 (E.D. Cal. 2016) ............................................ 6, 10-11

*Holt v. Facebook, Inc.,*

    240 F. Supp. 3d 1021 (N.D. Cal. 2017).....................................15-16, 18-19

*INS v. Chadha,*

    462 U.S. 919 (1983)............................................................................... 19

*Lair v. Bullock,*

    697 F.3d 1200 (9th Cir. 2012) ............................................................... 10

*Madsen v. Women's Health Ctr., Inc.,*

    512 U.S. 753 (1994)............................................................................... 15

*Matal v. Tam,*

    137 S. Ct. 1744 (2017)....................................................................... 7, 13

*Mejia v. Time Warner Cable, Inc.,*

    2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017)....................................... 15-17

*Menotti v. City of Seattle,*

    409 F.3d 1113 (9th Cir. 2005) .................................................................. 8

*Mey v. Venture Data, LLC,*

    245 F.Supp.3d 771 (N.D. W. Va. 2017) .................................................. 11

*Mims v. Arrow Fin. Servs. LLC,*

    565 U.S. 368 (2012).......................................................................... 1, 14

*Moser v. FCC,*

    46 F.3d 970 (9th Cir. 1995) .........................................................3-6, 8-10

*Naehu v. Provest,*

    No. CIV. 97-00262 ACK, 1997 WL 1037947 (D. Haw. Aug. 12, 1997) .... 5

*Reed v. Town of Gilbert,*

- iv

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

135 S. Ct. 2218 (2015) ................................................................9-10, 12-13

*Reno v. ACLU*,

 521 U.S. 844 (1997) .................................................................... 18

*Retail Dig. Network, LLC v. Prieto*,

 861 F.3d 839 (9th Cir. 2017) ........................................................ 7

*Moser v. FCC*,

 46 F.3d 970 (9th Cir. 1995) .............................................3-6, 8-10

*Satterfield v. Simon & Schuster, Inc.*,

 569 F.3d 946 (9th Cir. 2009) ........................................................ 1

*Sliwa v. Bright House Networks, LLC*,

 No. 2:16-cv-00235-JES-MRM, Doc. 113 (M.D. Fla., filed Nov. 2, 2017) 10

*Sorrell v. IMS Health, Inc.*,

 564 U.S. 552 (2011) .................................................................... 10

*St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*,

 2007 U.S. Dist. LEXIS 11650 (W.D. Wash. Feb. 16, 2007)........................ 1

*United States v. Williams*,

 533 U.S. 285 (2008) ...................................................................... 8

*Van Bergen v. Minnesota*,

 59 F.3d 1541 (8th Cir. 1995) ....................................................... 11

*Williams-Yulee v. Florida Bar*,

 135 S. Ct. 1656  (2015).................................................................. 15

*Woods v. Santander Consumer USA Inc.*,

 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) .......................................... 19

S<small>TATUTES</small>

47 U.S.C. § 227 *et seq*........................................................................ passim

R<small>ULES</small>

Federal Rules of Civil Procedure 12(c). .................................................... 1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1
2
3
REGULATIONS
4
Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014 (2003), F.C.C. Comm'n Order No. 03-153, modified by 18 F.C.C.R. 16972 ................................................................................................. 1
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") is "aimed at protecting recipients from the intrusion of receiving unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).   As the Supreme Court has recognized, the statute reflects Congress's findings that that consumers are outraged over the proliferation of automated telephone calls and that these intrusive, nuisance calls are an invasion of privacy.  *See Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 370 (2012).   Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America.   The TCPA directly combats the threat to privacy caused by such automated marketing practices.[1]

Defendants, Charter Communications, Inc., and Spectrum Management Holding Company, LLC ("Defendants"), filed a Motion for Judgment on the Pleadings ("Defendants' Motion") that does not contest Plaintiff Steve Gallion's ("Plaintiff") claims that Defendants made precisely such intrusive and invasive telemarketing calls to thousands of individuals such as Plaintiff without their permission or consent.   Instead, Defendants' Motion is a facial attack on the constitutionality of the statute specifically directed at the conduct that gave rise to

---

[1] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (observing that the "TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls," and that "consumers complained that such calls are a 'nuisance and an invasion of privacy.'").   The Federal Communications Commission ("FCC") confirmed in 2003 that "telemarketing calls are even more of an invasion of privacy than they were in 1991," and "we believe that the record demonstrates that telemarketing calls are a substantial invasion of residential privacy, and regulations that address this problem serve a substantial government interest." *Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 (2003), F.C.C. Comm'n Order No. 03-153, modified by 18 F.C.C.R. 16972.

- 1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

this cause of action—a statute that has already been held to be constitutional by the Ninth Circuit *twice*.  In fact, there is unanimous agreement among the federal courts that the TCPA is constitutional.

Defendants' Motion offers no legitimate basis to dismiss Plaintiff's Complaint.  Defendants seek to characterize a single, valid exception to the TCPA as if it generated a "patchwork regime of content- and speaker-based restrictions on speech."  Defendants' Motion at 10.  However, it is well established, including by binding Ninth Circuit precedent, that the government may make content-based distinctions among different commercial messages without subjecting its regulations to strict scrutiny.  And even more damaging to Defendants' argument is that the Ninth Circuit has already held the TCPA to be a restriction on the methods by which messages may be disseminated, not a restriction on the contents of the messages.  In fact, the Ninth Circuit has already effectively rejected Defendants' fundamental contention that a narrow exception to the TCPA's time, place or manner restriction for particular types of calls suffices to make it a content-based law subject to strict scrutiny.

The Defendants try to squeeze between binding Ninth Circuit decisions at every turn, but these issues have already been decided against Defendants.  Even the few district courts that have been swayed by similar arguments that the TCPA must now be viewed as content-based have upheld its constitutionality even under strict scrutiny.  Despite all of this, Defendants invite this Court to go rashly where no court has gone before and against every Court before it.

For these reasons, as set forth in more detail below, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion in its entirety.

## II. <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

On July 6, 2017, Plaintiff filed the operative Complaint in this action. Dkt. No. 1.  The basis of Plaintiff's Complaint is that Defendants violated the TCPA by spamming Plaintiff and thousands of others on a daily basis with robocalls

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

promoting its telecommunications services using an automatic telephone dialing system and prerecorded voice. *Id.* Defendants used these devices to call thousands of individuals, who, like Plaintiff, were never customers of Defendants and never provided any personal information, including their cellular telephone numbers, to Defendants for any purpose whatsoever. *Id.* Plaintiff and the class he seeks to represent never provided Defendants with prior express consent to be harassed with advertisements using an automatic telephone dialing system or prerecorded voice. *Id.*

Defendants filed a Motion to Stay these proceedings, Dkt. No. 25, and this Motion for Judgment on the Pleadings, Dkt. No. 18. In neither do Defendants deny the allegations in Plaintiff's Complaint that it made such harassing and intrusive calls. Dkt. 25 and Dkt. 18. In fact, in neither motion do Defendants deny that its actions were in violation of the TCPA. *Id.* Instead, Defendants' Motion for Judgment on the Pleadings argues that the TCPA as a whole is facially unconstitutional. Dkt. 18.

## III.   THE FIRST AMENDMENT AND THE TCPA

In *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995), the Ninth Circuit explained:

> Congress held extensive hearings on telemarketing in 1991. Based upon these hearings, it concluded that telemarketing calls to homes constituted an unwarranted intrusion upon privacy. The volume of such calls increased substantially with the advent of automated devices that dial up to 1,000 phone numbers an hour and play prerecorded sales pitches. S .Rep. No. 102–178, 102d Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1970. By the fall of 1991, more than 180,000 solicitors were using automated machines to telephone 7 million people each day. *Id.*
>
> In addition to the sheer volume of automated calls, Congress determined that such calls were "more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons" because such calls "cannot interact with the customer except in preprogrammed ways" and "do not allow the caller to feel the frustration of the called

- 3

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

party...." *Id.* at 1972. Customers who wanted to remove their names from calling lists were forced to wait until the end of taped messages to hear the callers' identifying information. Prerecorded messages cluttered answering machines, and automated devices did not disconnect immediately after a hang up. Id. at 1972. In a survey conducted for a phone company, 75 percent of respondents favored regulation of automated calls, and half that number favored a ban on all phone solicitation. *Id.* at 1970. Although 41 states and the District of Columbia have restricted or banned intrastate automated commercial calls, many states asked for federal legislation because states may not regulate interstate calls. *Id.*

*Id.* at 972. To combat such intrusive calls, the TCPA was enacted making it unlawful, in relevant part:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—. . .

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.SC. §227(b)(1)(A)(iii); *see also Moser*, 46 F.3d at 972; *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014) (holding that "there is no evidence that the government's interest in privacy ends at home..."), *aff'd on other grounds*, 136 S. Ct. 663 (2016).

In upholding the TCPA against a First Amendment challenge, the Ninth Circuit held that the TCPA "… should be analyzed as a content-neutral time, place, and manner restriction." *Moser*, 46 F.3d at 973.  Applying the constitutional standards applicable to such restrictions, the Ninth Circuit found the statute constitutional because "the restrictions are justified without reference to the

- 4
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

content of the restricted speech… they are narrowly tailored to serve a significant governmental interest, and … they leave open ample alternative channels for communication of the information." *Id.* at 973 (internal quotation marks and citations omitted).  The court "upheld the statute after finding that the protection of privacy is a significant interest, the restriction of automated calling is narrowly tailored to further that interest, and the law allows for 'many alternative channels of communication.'" *Gomez*, 768 F.3d at 876 (quoting *Moser*, 46 F.3d at 974-75).

## IV.   LEGAL STANDARD

"Judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law." *Naehu v. Provest*, No. CIV. 97-00262 ACK, 1997 WL 1037947, at *1 (D. Haw. Aug. 12, 1997) (citing *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)). "A district court may grant judgment to a defendant only when it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Brown v. United States*, No. 09-XV-1453W BLM, 2010 WL 2719967, at *1 (S.D. Cal. July 8, 2010) (citing *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997)).

## V.   LEGAL ARGUMENT

Defendants invite this Court to go rashly where no court has gone before by holding the TCPA facially unconstitutional under the First Amendment. Every court to face this argument, both before and after the amendment of the TCPA to provide an exception for government-debt-collection calls, has rejected it. As explained above, though, the Ninth Circuit has twice upheld the TCPA against First Amendment challenges. *See Moser*, 46 F.3d at 974–75; *Gomez*, 768 F.3d at 876–77. A recent decision of another district court in this Circuit concluded that the approach underlying those decisions remains binding circuit law in the wake of

- 5 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

the Supreme Court precedents Defendants invoke. *See Gresham v. Picker*, 214 F. Supp. 3d 922 (E.D. Cal. 2016). And even the handful of courts that have accepted the invitation to subject the TCPA to strict scrutiny have held that it is constitutional because it is narrowly tailored to serve the compelling interest in protecting the privacy of telephone users. *See, e.g., Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017). The unanimous agreement among the federal courts that the TCPA is constitutional rests on solid legal grounds and has received the full backing of the United States Department of Justice.[2] Consistent with this weight of authority, this Court should reject Defendants' motion for judgment on the pleadings and allow the parties to go forward with discovery, litigation on the merits, and consideration of whether this case may proceed as a class action.

Defendants' First Amendment claim rests on their characterization of the TCPA as a content-based restriction of pure speech subject to strict scrutiny and facial invalidation because, in Defendants' view, it is not narrowly tailored to serve a compelling governmental interest. Defendants' contention that the statute is "content-based" does not rest on the basic prohibition at issue—placing unconsented-to calls to cell phones or residential lines using an automated dialing system or recorded voice. That prohibition is not based on the content of the calls and is, as the Ninth Circuit concluded, a classic "time, place or manner" restriction subject to no more than intermediate First Amendment scrutiny. *See Moser*, 46 F.3d at 973–74; *Campbell-Ewald*, 768 F.3d at 876–77. Instead, Defendants argue that the statute is not content neutral because it has an exception—for calls seeking to collect debts owed to the federal government—that Defendants argue renders

---

[2] The Justice Department, as in this case, has regularly filed briefs supporting the constitutionality of the TCPA against challenges identical to Defendants', most recently in *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-00235-JES-MRM, Doc. 113 (M.D. Fla., filed Nov. 2, 2017).

- 6 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

the entire statutory scheme content-based. Defendants' argument fails at every step of its analysis.

### A. Defendants Fail to Demonstrate That the Statute's Allegedly Unconstitutional Application to Fully Protected Speech Is Substantial in Comparison to Its Undoubtedly Legitimate Application to Commercial Speech

First, Defendants err in seeking to invoke constitutional doctrines applicable to content-based restrictions on fully protected speech. Defendants themselves do not contest that their speech at issue in this case, which sought to sell its services to new subscribers, was commercial speech. It is well established, including by recent Ninth Circuit precedent, that the government may make content-based distinctions among different commercial messages without subjecting its regulations to strict scrutiny. *See Contest Promotions, LLC v. City & County of San Francisco*, 874 F.3d 597 601 (9th Cir. 2017); *Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 846–47 (9th Cir. 2017) (en banc); *see also Matal v. Tam*, 137 S. Ct. 1744, 1767 (2017) (Kennedy, J., concurring in the judgment) (stating that "content based discrimination" is not of "serious concern in the commercial context"); *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017) (noting that a content-based commercial speech regulation is subject to intermediate scrutiny). Thus, even if the statutory exceptions for government debt collection and emergency calls made the TCPA "content-based," the statute's application to Defendants' commercial messages would not be subject to strict scrutiny.

Defendants try to sidestep the point by arguing that because the statute does not limit its prohibition on unconsented-to calls to commercial messages, its supposed lack of content neutrality renders it facially invalid under the strict scrutiny applicable to fully protected speech. But Defendants overlook a critical step in any successful facial First Amendment challenge made by a speaker to whom a law could constitutionally be applied: The challenger must demonstrate that the challenged statute's unconstitutional sweep is substantial as compared to

- 7 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

its permissible applications. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1128 (9th Cir. 2005).

Defendants have made no attempt to carry that burden and could not do so if it tried. The vast bulk of the TCPA's applications are to commercial speech, and as to those applications, its exception for government-debt-collection calls do not call its constitutionality into any serious question. The application of the statute to fully protected speech, by contrast, is relatively insubstantial, and the "strong medicine" of a facial challenge, *United States v. Williams*, 533 U.S. 285, 293 (2008), which here would preclude the statute's application to millions of purely commercial messages, is not necessary to vindicate interests in fully protected speech that could adequately be addressed in challenges to specific applications of the statute to such speech.[3]

## B. The TCPA Is a Permissible Content-Neutral Time, Place, or Manner Restriction

### 1. The Ninth Circuit's Decisions Upholding the TCPA Remain Authoritative

Even if the Defendants were correct that the Court should ignore the legitimate application of the statute to commercial speech and allow a facial challenge to proceed under standards applicable to fully protected speech, Defendants' arguments would fail. Defendants' assertion that the TCPA is a content-based restriction on speech subject to strict scrutiny was rejected by the Ninth Circuit in *Moser*, 46 F.3d at 973–74, a decision reaffirmed by the Ninth Circuit in *Campbell-Ewald*, 768 F.3d at 876–77.  As the Court held in those cases,

---

[3] In *Moser*, where the statute was challenged by a nonprofit organization rather than an entity engaged exclusively in commercial speech, the Ninth Circuit chose not to apply commercial-speech analysis, but noted that the standard it applied was equivalent to the commercial-speech test. *See* 46 F.3d at 973. *Moser* did not hold that an exclusively commercial speaker can successfully challenge the statute on its face based on standards applicable to fully protected speech without showing substantial overbreadth.

- 8 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

the TCPA prohibition on unconsented to calls using automated dialing systems or prerecorded voices is a restriction on the methods by which messages may be disseminated, not the contents of the messages. It is therefore subject to review under the intermediate scrutiny applicable to content-neutral time, place or manner restrictions, under which it need only directly serve a substantial government interest. *See Moser*, 46 F.3d at 973; *Campbell-Ewald*, 768 F.3d at 876. As the Ninth Circuit concluded in both *Moser* and *Campbell-Ewald*—and as every other court to address the subject has agreed—the TCPA's protection of the interest in the privacy of residential and mobile telephone users easily satisfies that standard. *See Moser*, 46 F.3d at 974–75; *Campbell-Ewald*, 768 F.3d at 876–77.

Defendants contend that those Ninth Circuit decisions are no longer binding on this Court because of one intervening change in the statute (the 2015 addition of the exception for federal debt collection calls) as well as recent Supreme Court cases (in particular, *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)) addressing the distinction between content-based and content-neutral laws.[4] Those developments, however, do not relieve this Court of its obligation to follow on-point precedents of the Ninth Circuit. Whether intervening developments effectively overrule or supersede the court of appeals' precedents is typically a

---

[4] Defendants argue weakly that the TCPA's provision allowing the FCC to provide for additional exceptions by regulation also makes it content-based. But the Ninth Circuit concluded in *Moser* that that provision is not content-based on its face, and that the validity of particular exceptions created by the FCC is outside the purview of a district court considering a constitutional challenge to the statute because FCC regulations implementing the TCPA may be challenged only in judicial review proceedings in a court of appeals. *See* 46 F.3d at 973. Defendants point to no intervening circumstances that have affected the validity of the Ninth Circuit's ruling on that point, and recent decisions have uniformly held that the FCC's exemption authority cannot be considered as a factor rendering the statute content-based. *See, e.g., Brickman*, 230 F. Supp. 3d at 1045; *Greenley v. Laborers' International Union of North America*, __ F. Supp. 3d __, 2017 WL 4180159, at *13 (D. Minn. Sept. 19, 2017).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

decision for the court of appeals itself to make en banc, not for district courts. *See Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). Circuit precedent remains binding as long as it "can be reasonably harmonized with the intervening authority." *Id*. Applying that standard, another district court recently concluded that the analytical approach to identifying content-neutral time, place or manner restrictions reflected in the Ninth Circuit's decisions in *Moser* and *Campbell-Ewald* remains authoritative within this Circuit. *Gresham v. Picker*, 214 F. Supp. 3d at 933–34.[5]

Indeed, *Moser* and *Campbell-Ewald* already rejected Defendants' fundamental contention that a narrow exception to the TCPA's time, place or manner restriction for particular types of calls suffices to make it a content-based law subject to strict scrutiny. At the time of both decisions, the TCPA already included an emergency-call exception, *see Moser*, 46 F.3d at 972, and the Ninth Circuit did not find that that exception took the TCPA outside the realm of content neutrality, even though Defendants' argument would appear to imply that the emergency exception also is a "content-based" one. Moreover, in deciding *Campbell-Ewald*, the Ninth Circuit already had the benefit of the Supreme Court's definition of "content-based" in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565 (2011), which *Reed* merely reiterated, *see* 135 S. Ct. at 2227.

This Court has no basis for concluding, therefore, that the Ninth Circuit would regard *Moser* and *Campbell-Ewald* to be superseded by *Reed* to the extent that they held the TCPA to be content-neutral notwithstanding the emergency

---

[5] *Gresham* concerned California's TCPA analogue that, with specified exceptions, prohibits unconsented-to calls using "automatic dialing-announcing devices." The Ninth Circuit upheld that statute in *Bland v. Fessler*, 88 F.3d 729 (1996), concluding that the statute's exceptions did not render it content-based and employing the same time, place or manner analysis applied in *Moser. See id.* at 734–34. *Gresham* held that *Bland*'s approach remains binding on courts in the Ninth Circuit after *Reed*. *See* 214 F. Supp. 3d at 933–34.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

exception. Nor can the Court conclude that the subsequent addition of one more narrow exception to the statute would alter that conclusion. The exceptions do nothing to change the court of appeals' correct view that the statute is, fundamentally, a restriction on *how* a speaker may convey a message, not the content of the message itself.

## 2. The Government-Debt-Collection Exception Does Not Make the TCPA "Content-Based"

Even if narrow exceptions to an otherwise content-neutral time, place or manner restriction could suffice to render the entire scheme content-based if they rested on the contents of the messages subject to the exception, the exception on which the Defendants rely would not do so because it is not genuinely content-based: It does not single out particular messages, or types of messages, for preferential treatment based on their content. Rather, the government debt collection exception is more properly viewed as based on the existence of a relationship between two parties—a federal government creditor and a debtor—that justifies creation an implied-in-law consent to the placement of a call, rather than as a regulation of the specific message of a call. *See Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 792 (N.D. W. Va. 2017). For the same reason, courts, including the Ninth Circuit, that have considered statutes that have similar relationship-based exceptions have rejected the argument that they are content-based both before and after *Reed*. *See Bland v. Fessler*, 88 F.3d at 733–34; *Gresham v. Picker*, 245 F. Supp. 3d at 933–34; *see also Gresham v. Swanson*, 866 F.3d 853, 855–56 (8th Cir. 2017); *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305 (7th Cir. 2017); *Van Bergen v. Minnesota*, 59 F.3d 1541, 1550 (8th Cir. 1995). The TCPA's government-debt-collection exception does not privilege a particular message or speaker, but a particular debtor-creditor relationship, one between a borrower and the federal government. There is nothing suspect about laws granting preferential treatment to the federal government as creditor: There are a host of such laws, including laws making such debts non-dischargeable in bankruptcy and

- 11 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

allowing means of collection not available to other creditors. The advantages they confer on the government as compared to other creditors do not implicate First Amendment values.[6]

### 3. Defendants' Reliance on *Reed* and *Cahaly* Is Misplaced

Defendants' claim that the exception renders the law content-based rests principally on *Reed* and on a single decision of the Fourth Circuit concerning a statute materially different from the TCPA. *Reed* concerned not a generally applicable time, place, or manner restriction with two narrow exceptions, but a municipal sign code that pervasively defined applicable rules based entirely on the contents of particular types of signs. 135 S. Ct. at 2227. The sign code's thoroughgoing reliance on a sign's content to determine the restrictions to which it was subject bore no resemblance to the TCPA's broad and neutral restriction on unconsented-to calls using particular technologies.

Defendants' reliance on the Fourth Circuit's decision in *Cahaly v. Larosa*, 796 F.3d 399 (2015), is equally misplaced. Leaving aside that a decision of another circuit cannot serve as a permissible basis for a district court in the Ninth Circuit to disregard binding precedents of its own court of appeals, the statute at issue in *Cahaly* was so radically different from the TCPA that the contrast serves only to emphasize the content-neutrality of the TCPA.

*Cahaly* involved a South Carolina statute that prohibited two types of unconsented-to "robocalls" defined by their contents: those with consumer messages and those with political messages. 796 F.3d at 402. The statute permitted all other messages. Thus, as the Fourth Circuit put it, "South Carolina's anti-robocall statute [was] content based because it ma[de] content distinctions on its face." *Id*. at 405. In *Reed*'s terms, it "applie[d] to particular speech because of the

---

[6] Likewise, the application of the emergency exception rests not on what the message says, but on the circumstances that give rise to the message. It does not reflect a governmental effort to regulate the content of emergency messages.

- 12 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

topic discussed or the idea or message expressed." *Id.* (quoting *Reed*, 135 S. Ct. at 2227. Specifically, "the anti-robocall statute applie[d] to calls with a consumer or political message but d[id] not reach calls made for any other purpose." *Id*. Notably, the statute distinguished one type of speech subject to the highest degree of First Amendment protection—political speech—from all other forms of fully protected speech, including charitable solicitations. The Fourth Circuit accordingly applied strict scrutiny to affirm an injunction against the application of the statute to a political speaker whose fully protected speech was singled out for prohibition based on its political content. *See id*. at 403–05.

The TCPA could hardly be more different. Its prohibition on unconsented-to calls does not apply to particular speech "because of the topic discussed or the idea or message expressed." It broadly applies to messages of all types, subject only to narrow exceptions. *Cahaly*'s condemnation of a statute that facially singles out political speech for regulation thus has no application to the TCPA. Not surprisingly, then, no court has applied *Cahaly* to find the TCPA or similar statutes regulating unconsented-to calls using autodialing technology or recorded voices violates the First Amendment.

### 4.  The TCPA Is Not "Viewpoint-Based"

Even further afield than its reliance on *Cahaly* is Defendants' suggestion that the government-debt-collection exception is not just content-based, but viewpoint-based. "At its most basic, the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal*, 137 S. Ct. at 1766 (2017) (Kennedy, J., concurring in the judgment). The TCPA's exception for government-debt-collection calls has nothing to do with disfavoring views expressed by callers: It does not turn on whether callers express opinions supporting or opposing any particular type of debt, or on the expression of views on any other subject. The applicability of the exception turns solely on the function

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

of a call in seeking to effectuate a specific type of transaction—payment of a debt. It is not aimed at suppressing opinions.[7]

## C. The TCPA Would Easily Satisfy Strict Scrutiny If It Were Applicable

Even if the TCPA's exception for government-debt-collection calls rendered it content-based, it would remain constitutional. As four district courts have recently concluded, the statute survives even strict scrutiny because the interest it serves—protecting privacy—is compelling, and it is narrowly tailored to serve that interest. No court has concluded otherwise.

That the interest in protecting the privacy of telephone users against unwanted intrusions is compelling is impossible to deny. The TCPA was enacted because of consumer outrage against such breaches of privacy, and it reflected congressional findings that technological advances had subjected consumers to ever-increasing volumes of the unwanted demands on their time and attention inherent in such calls. The Supreme Court recognized the importance and legitimacy of the interests that prompted the enactment of the statute in *Mims v. Arrow Financial Services*, 565 U.S. 368 (2012). As the Court explained, "'[A]utomated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy.'" *Id*. at 372 (quoting 105 Stat. 2394, note following 47 U.S.C. § 227). The structure of the TCPA, *Mims* concluded, made "evident" the "federal interest in regulating telemarketing to 'protec[t] the privacy of individuals' while 'permit[ting] legitimate [commercial] practices.'" *Id*. at 383 (quoting 105 Stat. 2394, note following 47 U.S.C. § 227).

---

[7] Even if the exception could be characterized as having something to do with viewpoint, "the Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about" some "course of action" on which the government has embarked. *Matal*, 137 S. Ct. at 1757.

- 14

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Courts that have considered the question have been unanimous in their agreement that the privacy interests identified by Congress and the Supreme Court in *Mims* as the basis for the TCPA's restrictions on unconsented-to calls are compelling. *See Greenley*, 2017 WL 4180159, at \*13; *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926, at \*16 (S.D.N.Y. Aug. 1, 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1033 (N.D. Cal. 2017); *Brickman* 230 F. Supp. 3d at 1046. As these courts have recognized, there is no serious dispute that "[t]he TCPA serves a compelling government interest." *Mejia*, 2017 WL 3278926, at \*16. Indeed, the interest in protecting personal tranquility and privacy "is certainly of the highest order in a free and civilized society." *Brickman*, 230 F. Supp. 3d at 1046 (quoting *Carey v. Brown*, 447 U.S. 455, 471(1980); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 775 (1994); *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995)). And the interest is as applicable to cell phones as to traditional residential phones, given the ubiquity of cell phones and their use in homes as well as other locations. *See Campbell-Ewald*, 768 F.3d at 876–77. "No one can deny the legitimacy of the [TCPA's] goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls." *Greenley*, 2017 WL 4180159, at \*13 (quoting *Patriotic Veterans*, 845 F.3d at 305).

The TCPA, moreover, serves the compelling interest in privacy in a narrowly tailored way. It "aims squarely at the conduct most likely" to harm the interest at issue. *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1668 (2015). The law focuses on unconsented-to calls that use the technologies that enable widespread and particularly intrusive abuses: automated dialing systems that allow unwanted calls to be made by the millions, and prerecorded messages that heighten consumers' annoyance at those intrusions. Thus, "Congress, in crafting this provision, carefully targeted the calls most directly raising its concerns about

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1  invasion of privacy." *Mejia*, 2017 WL 3278926, at *16; *see also Brickman*, 230 F.
2  Supp. 3d at 1048.

3        Defendants' argument that the TCPA is not sufficiently tailored to serve the
4  compelling privacy interest rests principally on the assertion that the statutory
5  exception renders it impermissibly underinclusive and that the supposedly content-
6  based distinction drawn by the exception fails to serve a compelling interest. But
7  although the government-debt-collection exception may diminish to some
8  incremental degree the achievement of the statute's privacy-protection purposes,
9  the statute's application to the far larger universe of calls outside the exception still
10  directly and substantially serves the government's compelling interest. *See
11  Greenley*, 2017 WL 4180159, at *14; *Mejia*, 2017 WL 3278926, at *17; *Brickman*,
12  230 F. Supp. 3d at 1047. Thus, "the TCPA's exemptions leave negligible damage
13  to the statute's interest in protecting privacy." *Brickman*, 230 F. Supp. 3d at 1048.

14        That the statute could go further does not make it fail strict scrutiny. As the
15  Supreme Court recently held in *Williams-Yulee*, "the First Amendment imposes no
16  freestanding 'underinclusiveness limitation.'" 135 S. Ct. at 1668 (quoting *R.A.V. v.
17  St. Paul,* 505 U.S. 377, 387 (1992). Thus, a law "need not address all aspects of a
18  problem in one fell swoop; policymakers may focus on their most pressing
19  concerns." *Id*. The court has "accordingly upheld laws—even under strict
20  scrutiny—that conceivably could have restricted even greater amounts of speech in
21  service of their stated interests." *Id*.

22        Here, as in *Williams-Yulee*, even if subjected to strict scrutiny, the TCPA
23  "raises no fatal underinclusivity concerns" because it is "aim[ed] squarely at the
24  conduct most likely" to infringe the privacy of telephone consumers. *Id.* And it is
25  by no means "riddled with exceptions." *Id.* at 1669. Notwithstanding its narrow
26  exceptions, the TCPA still bans a broad swath of the most intrusive forms of robo-
27  calling. *See Holt*, 240 F. Supp. 3d at 1033. Moreover, the government "has a good
28  reason," *Williams-Yulee*, 135 S. Ct. at 1669, for the government-debt exception:

- 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS**

protection of the public fisc. *See Mejia*, 2017 WL 3278926, at *16. And because callers seeking to collect debt on behalf of the government can be held accountable to public control in other ways, the government has reason to see calls on behalf of the government and private calling activity as "implicat[ing] a different problem." *Williams-Yulee*, 135 S. Ct. at 1669. Strict scrutiny or no, the government need not be put to the "all-or-nothing choice," *Williams-Yulee*, 135 S. Ct. at 170, of including government debt collection calls in the TCPA's prohibition or forgoing regulation of robocalls altogether.[8]

Defendants suggest that the statute fails strict scrutiny unless the statutory distinction between the universe of prohibited calls and the narrow set of permissible government-debt-collection calls itself serves a compelling interest. As *Williams-Yulee* makes clear, however, the determinative question is not whether a statutory exception serves a compelling interest, but whether, in light of the exception, the statute as a whole no longer sufficiently serves the compelling interest invoked to justify it. In such circumstances, the exception may "raise 'doubts about whether the government is in fact pursuing the interest it invokes,'" or "reveal that a law does not actually advance a compelling interest." *See* 135 S. Ct. at 1668 (citation omitted). Here, by contrast, because the exception does not do "appreciable damage" to the compelling interest in privacy relative to the substantial protection the statute provides, the TCPA does not fail strict scrutiny regardless of whether the government-debt-collection exception itself serves a

---

[8] Likewise, the exception for emergency situations, does not undermines the statutory objective of protecting privacy, as the circumstances in which it applies are rare and likely to be regarded by recipients of calls as justifying whatever intrusion a call may entail. Indeed, the exception for emergencies may itself serve a compelling interest, which would negate any contention that the exception could cause the statute to fail strict scrutiny. In any event, Defendants, unlike some other litigants who have challenged the TCPA's constitutionality, do not contend that the emergency exception calls its constitutionality into question.

- 17

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

compelling interest. *Brickman*, 230 F. Supp. 3d at 1048 (quoting *Reed*, 135 S. Ct. at 2232).

Even if the exception had to serve a compelling interest, however, the statute would still satisfy strict scrutiny. "[O]bligations to and rights of the United States under its contracts" involve "uniquely federal interests," *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988), and "protection of the public fisc is a matter that is of interest to every citizen." *Brock v. Pierce County*, 476 U.S. 253, 262 (1986). Thus, "the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts." *Mejia*, 2017 WL 3278926, at *16. By facilitating collection of government debts, the exception directly advances that interest.

Defendants also argue that there are various other "less restrictive alternatives" to the TCPA's prohibition on unconsented-to calls using autodialing equipment or recorded voices. But where the government is pursuing a compelling interest, a less restrictive alternative can cause a law to fail strict scrutiny only if it would be "at least as effective" in vindicating the government's interest as the challenged law. *Reno v. ACLU*, 521 U.S. 844, 874 (1997). As each of the courts that have recently upheld the TCPA under strict scrutiny has concluded, the kinds of alternatives Defendants propose, such as limits on the hours in which companies may intrude on the privacy of telephone users, or no-call lists for which consumers must affirmatively sign up, would fail to achieve the government's compelling interest as effectively as the TCPA because—as is evident merely from a description of the alternatives—they would continue expose consumers to large numbers of intrusive, unwanted calls. *See Greenley*, 2017 WL 4180159, at *14; *Mejia*, 2017 WL 3278926, at *17; *Holt*, 240 F. Supp. 3d at 1034; *Brickman* 230 F. Supp. 3d at 1048–49.

- 18

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**D. The Government-Debt-Collection Exception Is Severable**

Defendants' case would fail even if the government-debt-collection exception was an invalid content-based provision because the remedy would not be invalidation of the TCPA's broad, content-neutral prohibition on unconsented-to calls, but severance of the narrow exception—which would not assist Defendants in avoiding liability in this case. As the Supreme Court has instructed, "invalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *INS v. Chadha*, 462 U.S. 919, 931–32 (1983). Because the TCPA was in fact originally enacted without the government-debt-collection exception, and there is no suggestion that the Congress that added the exception years later would have chosen to repeal the entire statute if it could not create the exception, it is apparent that the exception should be severed if it would otherwise impair the statute's constitutionality. Thus, "even assuming this newly-added exception were to be invalid, it would not deem the entire TCPA to be unconstitutional because the exception would be severable from the remainder of the statute." *Brickman*, 230 F. Supp. 3d at 1047; *see also Holt*, 240 F. Supp. 3d at 1033 n.4; *Woods v. Santander Consumer USA Inc.*, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017).

In sum, Defendants' First Amendment challenge is not only meritless, but would be unavailing to Defendants even if it had some theoretical basis. Although such challenges to the TCPA have become newly fashionable in light of the 2015 amendment of the statute, there is sound reason why the United States Department of Justice has persistently defended the statute, and why courts have repeatedly upheld it. This Court should do the same.

**VI.   CONCLUSION**

Based upon the foregoing discussion, Plaintiff respectfully requests this Court deny Defendants' Motion.

- 19

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1

2   Dated: January 12, 2018          **Law Offices of Todd M. Friedman, P.C.**

3

4                                    By: _/s/ Todd M. Friedman_____

5                                         Todd M. Friedman, Esq.
                                          Adrian R. Bacon, Esq.
6                                         Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## CERTIFICATE OF SERVICE

Filed electronically on this January 12, 2018, with:

United States District Court CM/ECF system

Notification sent electronically on this January 12, 2018, to:

Honorable Christina A. Snyder
United States District Court
For The Central District of California

And to all Counsel who have appeared on the Electronic Court Filing System in this Matter

s/Todd M. Friedman
Todd M. Friedman

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**