**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) - DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. 18, filed September 26, 2017)

DEFENDANT'S MOTION TO STAY CASE (Dkt. 25, filed October 13, 2017)

## I.    INTRODUCTION

On July 6, 2017, plaintiff Steve Gallion filed this putative class action against defendants Charter Communications, Inc., Spectrum Management Holding Company, LLC, and Does 1–10 alleging violations of the Telephone and Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Dkt. 1 ("Compl."). Plaintiff alleges that defendants placed a call to his cellular phone without his "prior express consent" to sell or solicit their services using an "automatic telephone dialing system" and an "artificial or prerecorded voice" in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff asserts claims for negligent and willful or knowing violations of the TCPA and seeks statutory damages on behalf of himself a nationwide class of similarly situated consumers.

On September 26, 2017, defendants filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), raising a facial First Amendment challenge to the TCPA. Dkt. 18 ("MJP"). On January 9, 2018, the United States of America (the "government") intervened for the limited purpose of defending the TCPA's constitutionality. Dkt. 38 ("Gov't Mot."). On January 12, 2018, plaintiff filed an opposition. Dkt. 39 ("MJP Opp'n"). On January 22, 2018, defendants filed a consolidated reply. Dkt. 42 ("MJP Reply").

On October 13, 2017, defendants filed a motion to stay the proceedings in this case pending the later of (1) decision of the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in ACA Int'l v. Fed. Commc'ns Comm'n, No. 15-211 (D.C. Cir.) ("ACA International"), or (2) the decision of this Court on the motion for judgment on

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

the pleadings. Dkt. 25 ("Stay Mot."). On October 23, 2017, plaintiff filed an opposition, dkt. 29 ("Stay Opp'n"); and defendants filed a reply on October 30, 2017, dkt. 32 ("Stay Reply"). On February 5, 2018, the Court held a hearing on the motions. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The Telephone Consumer Protection Act of 1991, Pub. L. No. 102–243, 105 Stat. 2394–2402 (1991), was enacted by Congress "to protect the privacy interests of residential telephone subscribers." S. Rep. No. 102-178, at 1 (1991). Section 227(b)(1)(A)(iii) of the TCPA provides, in relevant part:

> It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii). Congress added the final clause of this provision, the government-debt exception, as part of the Bipartisan Budget Act of 2015, Pub. L. No. 114–74, 129 Stat. 584, 588 (2015). The TCPA also authorizes the FCC to promulgate rules exempting calls where doing so would "not adversely affect the privacy rights" that the law seeks to protect. See 47 U.S.C. § 227(b)(2)(B)(ii), (b)(2)(C). Consumers who receive calls prohibited by section 227(b)(1)(A)(iii) may recover the greater of their actual monetary loss or $500 per violation and treble damages where a violation is willful or knowing. Id. § 227(b)(3).

An "automatic telephone dialing system" ("ATDS") is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1). On July 10, 2015, the FCC issued an Omnibus Declaratory Ruling and Order addressing, among other issues, the definition of ATDS. In re Rules & Regs. Implementing the TCPA of 1991, 30 F.C.C.R. 7961, 7974 (July 10, 2015). Finding that Congress intended a broad definition of ATDS, the FCC interpreted the term "capacity" to include equipment that lacks the "present ability" to dial randomly or sequentially. Id. at 2974. In other words, "capacity" was broadly interpreted to include equipment that had potential or future capacity to store, produce, and dial random or sequential numbers. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

After the FCC issued its ruling, nine companies filed petitions for review, which were consolidated into a single appeal to the D.C. Circuit in <u>ACA International</u>. The petitioners are requesting that the D.C. Circuit vacate the FCC's interpretation of the term "capacity" as used in the definition of an ATDS pursuant to the court's authority under the Hobbs Act, 28 U.S.C. § 2342. Oral argument took place on October 19, 2016, but no decision has been issued.

## III.    LEGAL STANDARDS

### A.      Motion for Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings at any time after the pleadings are closed, so long as the motion is filed in sufficient time that it will not delay trial. "For the purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." <u>Id.</u>

In deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence. <u>See</u> Fed. R. Civ. P. 12(c) (stating that a Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court). A district court may, however, consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, a district court may consider a document if the complaint "necessarily relie[s]" on it, and the authenticity of the document is not challenged. <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998).

### B.      Motion to Stay Case

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." <u>Clinton v. Jones</u>, 520 U.S. 681, 706–07 (1997) (citing <u>Landis v. North Am. Co.</u>, 299 U.S. 248 (1936)). When considering whether to stay proceedings, courts consider (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|----------|------------------------|------|-------------------|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. |

forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). However, "if there is even a fair possibility that the stay . . . will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (internal quotation marks and citation omitted). The party seeking a stay bears the burden of establishing its need. Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255).

## IV.   DISCUSSION

### A.      Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings on the ground that section 227(b)(1)(A)(iii) of the TCPA violates the First Amendment because it contains content- and speaker-based restrictions on speech and fails strict scrutiny. Defendants' facial constitutional challenge is based primarily on the 2015 amendment to the TCPA establishing a government-debt exception and the Supreme Court's recent decision in Reed v. Town of Gilbert, — U.S. —, 135 S. Ct. 2218 (2015). Prior to the 2015 amendment and Reed, the Ninth Circuit twice considered and upheld the constitutionality of the TCPA as a valid, content-neutral speech regulation under intermediate scrutiny. See Gomez v. Campbell-Ewald Co., 768 F.3d 871, 876 (9th Cir. 2014), aff'd on other grounds, 136 S. Ct. 663 (2016); Moser v. FCC, 46 F.3d 970 (9th Cir. 1995).

No appellate court has since considered the constitutionality of the TCPA. However, four district courts—including two in the Northern District of California—have addressed the issue and held that section 227(b)(1)(A)(iii) is content based in light of the government-debt exception and Reed but nevertheless upheld the law under strict scrutiny. See Brickman v. Facebook, Inc., 230 F. Supp. 3d 1036 (N.D. Cal. 2017); Holt v. Facebook, Inc., 240 F. Supp. 3d 1021 (N.D. Cal. 2017); Mejia v. Time Warner Cable Inc., No. 15-CV-6445 (JPO), 2017 WL 3278926, at *14 (S.D.N.Y. Aug. 1, 2017); Greenley v. Laborers' Int'l Union of N. Am., — F. Supp. 3d —, 2017 WL 4180159 (D. Minn. 2017). Both Brickman and Holt are currently pending on interlocutory appeal to the Ninth Circuit. For the following reasons, the Court finds these decisions persuasive and accordingly denies defendants' motion.

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

### i.     Defendants' Standing

As a threshold matter, the government argues that defendants lack "standing" to challenge the TCPA because the government-debt exception is severable. Gov't Mot. at 8. Consequently, the government contends that invalidating the exception would have no effect on defendants' liability under the TCPA, and therefore defendants' "injuries would not be redressed." Id. at 9; see Brickman, 230 F.Supp.3d at 1047 (finding that "even assuming this newly-added exception were to be invalid, it would not deem the entire TCPA to be unconstitutional because the exception would be severable from the remainder of the statute.") (citing INS v. Chadha, 462 U.S. 919, 931–32 (1983) ("invalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.")).

The Court doubts whether the requirements of injury in fact, causation, and redressability under Article III apply here because "the issue of standing in civil litigation normally arises in the context of the plaintiff's standing to sue, and not in the defendant's standing to defend against suit." Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1265 (11th Cir. 2015); see 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531 (3d ed. 2014) (noting that the party focused upon is "almost invariably the plaintiff" and that "ordinarily the role of defendants is considered only in determining whether they have caused the injury complained of and whether an order directed to them will redress that injury"). Indeed, all of the cases cited by the government involve the issue of whether plaintiffs have standing to challenge a severable statute on First Amendment grounds. See Gov't Mot. at 9.

The court in Mejia also rejected this standing argument, finding that a TCPA defendant whose liability would not be eliminated by striking down the government-debt exception nonetheless had standing to challenge the statute's "underinclusiveness—that is, imposing liability for [defendant's] calls but not for analogous calls placed for the purposes of debt collection." 2017 WL 3278926, at *12 (citing Tex. Monthly, Inc. v. Bullock, 489 U.S. 1, 7–8 (1989) (rejecting similar standing argument because it would "effectively insulate underinclusive statutes from constitutional challenge")). The Ninth Circuit has also "long held that plaintiffs have standing to challenge exceptions" to laws regulating speech "as underinclusive when the exception does not apply to the plaintiff." Maldonado v. Morales, 556 F.3d 1037, 1044 (9th Cir. 2009). Here, defendants' primary argument is that section 227(b)(1)(A)(iii) is underinclusive. See MJP at 18–22. Accordingly, defendants have standing to challenge the TCPA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| | | | |
|---|---|---|---|
| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

### ii.    Whether Section 227(b)(1)(A)(iii) is Content Based

The Supreme Court in <u>Reed</u> affirmed that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226. In that case, the town of Gilbert, Arizona passed an ordinance prohibiting the display of outdoor signs without a permit, but exempted 23 categories of signs including ideological signs, political signs, and temporary directional signs. <u>Id.</u> at 2224. The ordinance imposed different size, placement, and time restrictions depending on the category. <u>Id.</u> at 2224–25. In analyzing the ordinance's constitutionality, the Court explained that courts must first determine whether the law is content neutral on its face. <u>Id.</u> at 2228. The Court explained that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." <u>Id.</u> at 2227. Such is the case "regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." <u>Id.</u> at 2228 (internal quotation marks and citation omitted).

Applying these principles, the Court held that the ordinance was content based because its restrictions "depend entirely on the communicative content of the sign." <u>Id.</u> Even assuming the town's asserted interests in preserving its aesthetic appeal and promoting traffic safety were compelling governmental interests, the Court held that the ordinance failed strict scrutiny because it was "hopelessly underinclusive." <u>Id.</u> at 2231. Specifically, the Court found that temporary direction signs were "no greater an eyesore" than ideological or political ones; that the ordinance allowed "unlimited proliferation" of large ideological signs while strictly limiting the number and size of smaller signs; and that the town offered no reason to believe that directional signs posed a greater threat to traffic safety than ideological or political signs. <u>Id.</u> at 2231–32.

In light of <u>Reed</u>, defendants argue that strict scrutiny applies to the TPCA because section 227(b)(1)(A)(iii) both (1) draws facial distinctions based on the content of the message, and (2) discriminates among favored and disfavored speakers. MJP at 3–13. Defendants' primary argument is that, by virtue of the government-debt exception, section 227(b)(1)(A)(iii) facially discriminates based on a call's content because it imposes liability for autodialed and prerecorded calls placed by private actors without the recipient's prior express consent "unless" the calls are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). In other words, "a private debt collection agency may call the same consumer twice in a row,

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

once to collect a private, government-guaranteed loan and once to collect a similar private loan not guaranteed by the government, but, absent prior express consent, may place only the first call using an autodialer or prerecorded voice." MJP at 4. Defendants argue that "this is a prototypical, 'facial' content-based restriction that 'draws distinctions based on the message a speaker conveys' and is subject to strict scrutiny, regardless of Congress's motive, content-neutral justification or lack of animus toward the ideas expressed." MJP at 4 (quoting Reed, 135 S. Ct. at 2227–28).

Plaintiff and the government argue that the government-debt exception does not trigger strict scrutiny because it is "relationship based, rather than content based." Gov't Mot. at 10. Plaintiff explains that the "exception is more properly viewed as based on the existence of a relationship between two parties—a federal government creditor and a debtor—that justifies creation of an implied-in-law consent to the placement of the call, rather than as a regulation of the specific message of a call." MJP Opp'n at 11. Plaintiff and the government rely on Mey v. Venture Data, LLC, 245 F. Supp. 3d 771 (N.D. W. Va. 2017), which upheld the TCPA under intermediate scrutiny—reasoning that section 227(b)(1)(A)(iii)'s exceptions for emergency calls, calls made with the prior consent of the recipient, and calls made to collect government-backed debt are each "are based on the relationship of the speaker and recipient of the message rather than the content of the message." Id. at 792 (citation omitted); see also Patriotic Veterans, Inc. v. Zoeller, 845 F.3d 303, 304–05 (7th Cir. 2017) (exceptions to the Indiana anti-robocall statute for "[m]essages from school districts to students, parents, or employees," were not content based because they "depend on the relation between the caller and the recipient, not on what the caller proposes to say."); Van Bergen v. State of Minn., 59 F.3d 1541, 1550 (8th Cir. 1995) (holding that Minnesota's anti-robocall statute with "central provision" that "applies to all callers, with three exceptions . . . based on relationship rather than content" was not content based). The government maintains that like the exceptions in Patriotic Veterans and Van Bergen, the government-debt exception is a "relationship-based carve-out from a content-neutral restriction, and therefore does not render the TCPA content based." Gov't Mot. at 11.

Plaintiff and the government's theory that the government-debt exception is relationship rather than content-based has been considered and rejected by Brickman, 230 F. Supp. 3d at 1045 and Greenley, 2017 WL 4180159, at *12. The Court agrees with the reasoning of these decisions. First, "[t]he plain language of the exception makes no reference whatsoever to the relationship of the parties." Brickman, 230 F. Supp. 3d at 1045. In contrast, the state statutes at issue in Patriotic Veterans and Van Bergen "expressly exempted calls from regulation based on a caller's relationship to the

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

recipient, not content." Id.  The court in Greenly noted that the decision relied upon by plaintiff and the government, Mey, 245 F. Supp. 3d 771, "provides no written analysis to support the conclusion that the TCPA's exceptions are content-neutral." Greenly, 2017 WL 4180159, at *12.  The court in Greenly also recognized that the government-debt exception "in one sense it *is* relationship based—it arises from a creditor–debtor relationship between the government and the recipient of the communication." 2017 WL 4180159, at *12.  However, "that relationship is between the debtor and the government, whereas the debt collector initiating a telephone call often may be a third party that has no preexisting relationship with the debtor." Id.  Defendants indicate, for example, that a private debt collection agency may call a debtor to collect a private, government-guaranteed loan *but not* a similar private loan.  MJP at 4.  "This content-based component effectively elevates government-debt communications above other communications, such as messages that pertain to private debts or messages that do not pertain to debts at all." Greenly, 2017 WL 4180159, at *12.

Accordingly, the Court agrees with these recent district court opinions in concluding that, under Reed, the debt-collection exception "require[s] a court to examine the content of the message in order to determine if a violation of the TCPA has occurred," rendering section 227(b)(1)(A)(iii) content-based on its face and therefore subject to strict scrutiny.[1] Brickman, 230 F. Supp. 3d at 1045; see also Holt, 240 F. Supp. 3d at 1032; Mejia, 2017 WL 3278926, at *14; Greenley, 2017 WL 4180159 at *13.

### iii.     Application of Strict Scrutiny to Section 227(b)(1)(A)(iii)

Because section 227(b)(1)(A)(iii) imposes a content-based restriction on speech, it is invalid under the First Amendment unless it survives strict scrutiny, "which requires the [g]overnment to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed, 135 S. Ct. at 2231 (citation omitted).  Although "it is the rare case" where a speech restriction can satisfy strict scrutiny, the Supreme Court has sought to "dispel the notion that strict scrutiny is 'strict in theory, but

---

[1] Because the Court concludes that the TCPA is content-based on its face in light of the government-debt exception and Reed, the Court need not reach defendants' alternative arguments and counter-arguments raised by plaintiff and the government. Defendants also contend that: (1) section 227(b)(1)(A)(iii) imposes a speaker-based preference for all government messages over private messages; (2) the statute regulates substantially more than commercial speech; and (3) the statute authorizes the FCC to promulgate further content-based exceptions.  See MJP at 5–13.

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

fatal in fact.' " <u>Williams–Yulee v. Florida Bar</u>, — U.S. —, 135 S. Ct. 1656, 1665–66 (2015) (international quotation marks and citations omitted).

### a. Compelling Government Interest

The Court agrees with plaintiff, the government, and the consensus view among district courts that the TCPA serves a compelling government interest in protecting residential privacy from the nuisance of unsolicited, automated telephone calls. <u>See Brickman</u>, 230 F. Supp. 3d at 1045–46; <u>Holt</u>, 240 F. Supp. 3d at 1033; <u>Mejia</u>, 2017 WL 3278926, at *16; <u>Greenley</u>, 2017 WL 4180159 at *13. Congress enacted the TCPA, which was supported by extensive congressional findings, in relevant part "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home." S. Rep. No. 102-178, at 1 (1991); <u>see also Moser</u>, 46 F.3d at 972 (following extensive hearings, Congress "concluded that telemarketing calls to homes constituted an unwarranted intrusion upon privacy.").

"The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." <u>Carey v. Brown</u>, 447 U.S. 455, 471 (1980). "One important aspect of residential privacy is protection of the unwilling listener. . . . Individuals are not required to welcome unwanted speech into their own homes and . . . the government may protect this freedom." <u>Frisby v. Schultz</u>, 487 U.S. 474, 484–85 (1988). In <u>Gomez</u>, the Ninth Circuit extended the government's interest in protecting residential privacy to cell phones, finding "no evidence that the government's interest in privacy ends at home" because "the nature of cell phones renders the restriction . . . all the more necessary to ensure that privacy" and "prohibiting calls to land lines alone would not adequately safeguard the stipulated interest in residential privacy." 768 F. at 876–77; <u>see also Patriotic Veterans</u>, 845 F.3d at 305 ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls."); <u>cf. Riley v. California</u>, — U.S. —, 134 S.Ct. 2473, 2494–95 (2014) ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' ") (quoting <u>Boyd v. United States</u>, 116 U.S. 616, 630 (1886))).

In addition to arguing that "there is no compelling 'privacy' interest in the context of consumers' receipt of mobile phone calls," defendants maintain that the TCPA fails strict scrutiny because section 227(b)(1)(A)(iii)'s government-debt exception does not serve a compelling interest. MJP at 14–17. The Court agrees with the government that

CIVIL MINUTES – GENERAL          'O'

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

this frames this inquiry too narrowly.  The question is whether the TCPA as a whole serves a compelling government interest, not whether each provision of the statute does so independently.  See Gov't Mot. at 18.  Even so, the court in Mejia reasoned that "the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts." 2017 WL 3278926, at *16 (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 366 (1943)); see also Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1227 (6th Cir. 1997) ("Protecting the public fisc ranks high among the aims of any legitimate government.").

Accordingly, the Court finds that the TCPA serves a compelling government interest in promoting and protecting residential privacy. See Brickman, 230 F. Supp. 3d at 1045–46; Holt, 240 F. Supp. 3d at 1033; Mejia, 2017 WL 3278926, at *16; Greenley, 2017 WL 4180159 at *13.

### b.      Narrow Tailoring

In order to withstand strict scrutiny, a law that serves a compelling government interest also must be narrowly tailored to achieve that interest.  Reed, 135 S.Ct. at 2231. "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative."  United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000).  Relatedly, the restriction cannot be overinclusive by "unnecessarily circumscrib[ing] protected expression." Republican Party of Minn. v. White, 536 U.S. 765, 775 (2002) (citation omitted).  Nor can the restriction be underinclusive by "leav[ing] appreciable damage to [the government's] interest unprohibited." Reed, 135 S.Ct. at 2232 (quoting White, 536 U.S. at 780).  Nevertheless, strict scrutiny requires that a content-based restriction "be narrowly tailored, not that it be 'perfectly tailored.' " Williams-Yulee, 135 S.Ct. at 1671 (quoting Burson v. Freeman, 504 U.S. 191, 209, (1992)).  Here, defendants argue that the TCPA cannot survive strict scrutiny because the law is both "hopelessly underinclusive and overinclusive," and because there are less restrictive means of achieving the government's interest.  MJP at 18–24.

The Supreme Court has recognized that although "underinclusivity raises a red flag, the First Amendment imposes no freestanding 'underinclusiveness limitation.' " Williams–Yulee, 135 S.Ct. at 1668.  After all, "[i]t is always somewhat counterintuitive to argue that a law violates the First Amendment by abridging *too little* speech."  Id. (emphasis in original).  However, underinclusiveness "can raise doubts as to whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | | |

government is pursuing an interest it invokes or whether the statute furthers a compelling interest." Brickman, 230 F.Supp.3d at 1045 (citing Williams–Yulee, 135 S.Ct. at 1668).

Defendants argue that the government-debt exception renders the TCPA "hopelessly underinclusive" under Reed: "[a] statutory scheme that contains a sweeping prohibition on all autodialed and prerecorded voice calls by private parties, but nevertheless permits *equally or much more intrusive* calls to be placed by the government, its agents, and by private actors collecting private, government-backed debts . . . does not rationally serve any privacy interest at all." MJP at 19. Defendants cite a variety of sources, including a letter from two senators to the FCC chairman, for the proposition that private debt-collection calls relating to government-backed loans are "prolific and raise *much more pervasive* privacy concerns than many other types of restricted calls." Id. at 19–20. Accordingly, defendants argue that the government-debt exception "inflicts more than just 'appreciable damage' to subscribers' privacy interests." Id. at 20 (citing Reed, 135 S.Ct. at 2232).

In contrast to the ordinance in Reed, which featured numerous insufficiently supported exceptions and allowed the "unlimited proliferation" of certain signs, see 135 S. Ct. at 2231–32, the TCPA's "government debt carve-out is a narrow exception from liability in furtherance of a compelling interest." Mejia, 2017 WL 3278926, at *17. As the government indicates, the exception is cabined by the TCPA's express grant of authority to the FCC to "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(2)(H). This provision allows "the FCC to craft limits on the exception to balance the need for privacy with the need to protect the public fisc." Gov't Mot. at 21. The FCC has issued a proposed rule limiting the number of federal debt collection calls to three within a 30-day period and limiting call lengths to 60 seconds or less, among other restrictions. See FCC 2016 Order, 31 FCC Rcd. at 9088–94. In addition, the exception is inherently "limited by the fact that such calls would only be made to those who owe a debt to the federal government." Brickman, 230 F. Supp. 3d at 1047. The Court agrees with the reasoning in Mejia and Brickman, and accordingly finds that the narrow, FCC-regulated government-debt exception does not do "appreciable damage" to the privacy interests underlying the TCPA. Reed, 135 S.Ct. at 2232.

Defendants additionally argue that the TCPA is overinclusive because there are a "host of less restrictive alternatives" that would allow the government to achieve its interests, such as time-of-day limitations, mandatory disclosures of a caller's identity, and do-not-call lists. MJP at 23–24. These alternatives would not, however, "be at least as

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

effective in achieving the legitimate purpose that statute was enacted to serve." <u>Reno v. Am. Civil Liberties Union</u>, 521 U.S. 844, 874 (1997). As the court explained in <u>Brickman</u>:

> Time-of-day limitations would not achieve the same privacy objectives because even though such a restriction may designate the span of time in which callers can intrude on an individual's privacy, it would also designate a time for intrusive phone calls. Mandatory disclosure of a caller's identity and disconnection requirements would also not be as effective in achieving residential privacy because these would not prevent the privacy intrusion from the phone call in the first place. Do-not-call lists would also not be a plausible less restrictive alternative because placing the burden on consumers to opt-out of intrusive calls, rather than requiring consumers to opt-in, would obviously not be as effective in achieving residential privacy.

<u>Brickman</u>, 230 F. Supp. 3d at 1048–49; <u>accord</u> <u>Holt</u>, 240 F. Supp. 3d at 1034; <u>Greenley</u>, 2017 WL 4180159, at *14; <u>see also</u> <u>Mejia</u>, 2017 WL 3278926, at *17 ("these alternatives do not fully foreclose the possibility that autodialier or prerecorded voice calls will be made to non-consenting consumers (even if they would keep such calls short, in a narrow window of time, or fully disclosed), and thus may not sufficiently further Congress's compelling interests in privacy, while also ensuring the collection of government debt.")

Notwithstanding these authorities, defendants maintain that plaintiff and the government have failed to meet their burden of "advancing *evidence* that no less restrictive alternative is available." MJP at 18; MJP Reply at 30–31. Defendants rely primarily on <u>Cahaly v. Larosa</u>, 796 F.3d 399 (4th Cir. 2015), a case in which the Fourth Circuit struck down a state anti-robocall statute on summary judgment because, assuming the state's interest in residential privacy was compelling, the government failed to prove the statute was narrowly tailored. <u>Id.</u> at 405–06. However, here, at the pleading stage, the Court finds plaintiff and the government's reliance on the analysis in <u>Brickman</u> and <u>Mejia</u> sufficient to demonstrate that no less restrictive alternatives exist. <u>See</u> <u>Holt</u>, 240 F. Supp. 3d at 1034.

In conclusion, the Court finds that section 227(b)(1)(A)(iii)'s government-debt exception facially renders the TCPA a content-based restriction on speech under <u>Reed</u>; however, the TCPA furthers a compelling government interest in protecting privacy and is narrowly tailored to achieve that interest. <u>See</u> <u>Brickman</u>, 230 F. Supp. 3d at 1045–49; <u>Holt</u>, 240 F. Supp. 3d at 1033–4; <u>Mejia</u>, 2017 WL 3278926, at *14–17; <u>Greenley</u>, 2017

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|----------|------------------------|------|-------------------|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

WL 4180159 at *12–14. Accordingly, defendants' facial First Amendment challenge fails, and the motion for judgment on the pleadings is **DENIED**.

At the hearing on February 5, 2018, defendants moved to certify this order for interlocutory review pursuant to 28 U.S.C. § 1292(b). A district court may certify under section 1292(b) if the following three requirements are met: "(1) there is a controlling question of law, (2) there are substantial grounds for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982). In both Brickman and Holt, the courts granted the defendant's motions to certify the question of whether the TCPA, as a content-based regulation of speech, survives strict scrutiny. See Brickman v. Facebook, Inc., No. 16-cv-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017); accord Holt v. Facebook, Inc., No. 16-cv-02266-JST (N.D. Cal. May 2, 2017). The Court agrees that (1) the constitutionality of the TCPA is a controlling question of law; (2) there are substantial grounds for difference of opinion because it is plausible that other courts could have reached the opposite result given that the question presented is a novel issue and strict scrutiny imposes a high bar; and (3) immediate appeal would advance the ultimate termination of the litigation. See Brickman, 2017 WL 1508719, at *2–4. Accordingly, the Court **GRANTS** defendants' motion for interlocutory review.

### B.     Motion to Stay Case

Defendants move to stay this action pending a final decision by the D.C. Circuit in ACA International. Stay Mot. at 1. Numerous district courts have considered whether to stay TCPA actions pending the outcome of ACA International, and the majority have also determined that a stay is warranted. For example, in Fontes v. Time Warner Cable Inc., No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015), this Court stayed a TCPA action concerning pre-recorded phone calls allegedly made from an ATDS. Id. at *1. The Court found a "legitimate possibility that the [D.C. Circuit] Court of Appeals may overturn" the FCC's final order, and because the issues in ACA International, including the definition of an ATDS, "could potentially be dispositive of the outcome in" that case, "the Court [found] that it is prudent to await further guidance from the D.C. Circuit." Id. at *4. The Court determined that a stay could save "substantial efforts by the parties" and avoid "the risk of wasting the resources of the Court." Id. at *5. Similarly, here, after balancing the interests of judicial economy against potential prejudice to the parties, the Court concludes that a stay is appropriate.

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 5:17-cv-01361-CAS(KKx) | | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | | |

### i. Simplifying Issues and Promoting Judicial Economy

The Court agrees with defendants that a stay will simplify the issues in this case and conserve judicial resources. The D.C. Circuit's decision in ACA International will significantly impact this case by clarifying the controlling legal standard regarding what constitutes an ATDS. While an opinion of the D.C. Circuit is normally not binding authority on this Court, it has exclusive jurisdiction over the FCC's final order under the Hobbs Act, 28 U.S.C. § 2342, and therefore the decision will be dispositive on numerous issues including the scope of liability based on the use of an ATDS. See Gage v. Cox Commc's, Inc., No. 2:16-cv-02708-KJD-GWF, 2017 WL 1536220, at *2 (D. Nev. Apr. 27, 2017). Plaintiff contends that ACA International is inapposite because the TCPA is worded disjunctively and therefore an individual may be held liable for either "using any automatic telephone dialing system *or* an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Plaintiff argues that because the complaint alleges defendants also used an "artificial or prerecorded voice," plaintiff is not required to prove that defendants used an ATDS, and accordingly ACA International is "wholly irrelevant." Stay Opp'n at 7. However, the D.C. Circuit's decision will significantly impact one ground for defendants' potential liability in this putative class action and will at least define the scope of discovery regarding ATDS. Accordingly, the Court finds that these savings in judicial resources militate in favor of granting a stay.

### ii. Potential Prejudice to the Non-Moving Party

The Court further finds that the potential prejudice to plaintiff is not substantial, particularly because, in all likelihood, the stay will be brief. This Court granted a similar stay in Fontes nearly two years ago when the D.C. Circuit had just set a briefing schedule in ACA International. Briefing concluded in February 2016 and the D.C. Circuit heard oral arguments in October 2016. It is thus reasonable to expect that the decision will be issued soon.[2] Plaintiff contends that further appeals of ACA International could delay his case "for years." Stay Opp'n at 9. However, defendants are only requesting a stay until a decision is issued by the D.C. Circuit panel in the current appeal; defendants are not seeking a stay through en banc review or a potential appeal to the Supreme Court. Stay

---

[2] According to the latest statistics, the median time between oral argument and a final disposition for civil appeals in the D.C. Circuit is 127 days. See Administrative Office of the United States Courts, Judicial Business of the United States Courts, Table B-4A (September 30, 2016) available at http://www.uscourts.gov/sites/default/files/ data_tables/jb_b4a_0930.2016.pdf.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

Reply at 9.  Accordingly, the Court expects that the duration of the stay will be short. Plaintiff further argues that he will be prejudiced due to "diminished memory and lack of available witnesses," including because of "company turnover" at defendants' offices. Stay Opp'n at 8, 15.  Plaintiff posits that defendants "may have hired a lead generator" to place calls to class members, and because these companies "typically go out of business and disappear quickly," there is a risk of losing evidence. Id. at 10–11.  Notwithstanding the lack of evidentiary support for these assertions, the Court finds that these concerns are largely mitigated by the anticipated short duration of the stay.

### iii.      Hardship or Inequity to the Proponent of the Stay

Although, as plaintiff emphasizes, being required to defend a suit is not, by itself, sufficient to merit a stay, see Lockyer, 398 F.3d at 1112, "the burden of proceeding with this litigation potentially unnecessarily is nonetheless a factor in favor of granting a stay . . . in conjunction with the savings to judicial resources . . . that the Court may consider, even if it is not dispositive." Reynolds v. Geico Corp., No. 2:16-cv-01940-SU, 2017 WL 815238, at *5 (D. Or. Mar. 1, 2017) (citing Small v. GE Capital, Inc., No. EDCV 15-2479 JGB (DTBx), 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) ("[F]urther litigation absent a ruling may be unnecessary and will require both parties and the court to spend substantial resources.").  The Court finds that these substantial savings in judicial resources outweigh any potential prejudice to plaintiff in waiting for a decision from the D.C. Circuit.

In conclusion, the Court finds that the aforementioned factors weigh in favor of granting a stay.  The D.C. Circuit's decision in ACA International may limit the scope of defendants' liability, and at the very least, will determine the scope of discovery and conserve both the parties' and this Court's resources by clarifying the law.  Although the possibility of prejudice to plaintiff weighs against a stay, the Court finds that the countervailing factors tip the balance, particularly because the duration of the stay is expected to be short.  Accordingly, defendants' request for a stay is **GRANTED**.

At the hearing on February 5, 2018, plaintiff indicated that defendants have disclosed the identity of a third party that placed calls at issue in this case.  Plaintiff requests a limited exception to the stay to allow plaintiff to issue a subpoena to the third party.  However, because plaintiff has not made a sufficient showing that there is a risk of losing evidence, the Court declines to grant plaintiff an exception to the stay.

**CIVIL MINUTES – GENERAL**       **'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:17-cv-01361-CAS(KKx) | Date | February 26, 2018 |
| Title | STEVEN GALLION V. CHARTER COMMUNICATIONS, INC. ET AL. | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' Rule 12(c) motion for judgment on the pleadings.  However, the Court **GRANTS** defendants' motion to certify the Court's order for interlocutory review pursuant to 28 U.S.C. § 1292(b).  The Court also **GRANTS** defendants' motion to stay.

Accordingly, this action is hereby **STAYED** pending a ruling by the D.C. Circuit Court of Appeals in ACA International, No. 15-1211.  If the Ninth Circuit grants defendants permission to appeal this Court's order, proceedings in this Court shall be **STAYED** pending a decision on that appeal.

**IT IS SO ORDERED.**

| | | | |
|---|---|---|---|
| | | 00 | : 00 |
| Initials of Preparer | | CMJ | |